UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIMBERLY REGENESIS, LLC and
DAMASCUS TRADING COMPANY,
LLC,

       Plaintiffs,

v.                                       Case No.: 2:19-cv-538-FtM-38NPM

LEE COUNTY,

       Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendant's Motion to Dismiss (Doc. 20), Plaintiffs' Third Corrected Memorandum in Opposition (Doc. 28), Defendant's Reply (Doc. 33), and Plaintiffs' Surreply (Doc. 35). For the following reasons, the Motion is denied.

## **BACKGROUND**

This case is about whether Lee County violated the Americans with Disabilities Act (ADA) when it denied Plaintiffs' rezoning request to allow a property to be used as a substance abuse treatment center and detoxification facility. The County's quasi-judicial decision was appealed through Florida's two-tier *certiorari* review process to the Circuit Court, and then to the Second District Court of Appeals. The issue here is whether Plaintiffs are getting an impermissible third bite at the apple. Defendant argues that the Court lacks subject-matter jurisdiction over this case for two reasons: (1) the *Rooker-*

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

*Feldman* doctrine strips this Court of subject-matter jurisdiction because Plaintiffs already litigated the ADA claim in the state courts; and (2) that Plaintiffs lack standing to bring their ADA claim. In addition, Defendants argue that *res judicata* or claim preclusion is fatal to Plaintiffs' case.

Because the claim here involves the ADA, the Court will generally limit its recitation of the facts (Doc. 1) to that issue.[2] In November 2014, TDM Consulting, Inc., Damascus Trading Company of Florida, LLC[3], Thomas M. Mouracade, and Beverly Grady, Esq. filed an application with Lee County for rezoning of the property at 6401 Winkler Road to redevelop the existing 5.15-acre parcel and buildings into "a holistic medicine center to provide social and health-related services including the treatment of substance use disorders" to be called the Kimberly ReGenesis Center. (Doc. 1 at ¶ 32). The Center would provide in-house residential substance abuse treatment.

Following a three-day hearing, the Lee County Hearing Examiner issued a Recommendation on May 13, 2015, recommending that the Board of County Commissions (BOCC) approve the request with two minor deviations. In doing so, the Hearing Examiner found in part:

---

[2] Attached to the Complaint are public records of the rezoning proceedings and attached to the Motion to Dismiss are the state court pleadings. A district court may consider extrinsic evidence in ruling on a motion to dismiss "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Amer. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see also Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267-68 (11th Cir. 2002). The public records reflecting the state court proceeding comply with both requirements. Thus, defendants' motion to dismiss need not be converted to a motion for summary judgment. *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1232 (11th Cir. 2010); *Jones v. Auto. Ins. Co. of Hartford*, 917 F.2d 1528, 1531-32 (11th Cir. 1990). Moreover, the documents submitted pertaining to the rezoning proceeding are public records which are "central" to Plaintiffs' claims. *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). Therefore, the Court takes judicial notice of those documents attached to Plaintiffs' Complaint.

[3] At the time Plaintiffs filed their application for rezoning, the Robin Attree Trust was the record owner of 6401 Winkler Road. The Trust authorized Kevin A. Kyle (by purchase contract and direct authorization), who in turn authorized TDM Consulting, Inc. and Damascus Trading Company of Florida, LLC (along with their counsel) to file and pursue rezoning. (Doc. 1 at ¶¶ 30-31).

> The principal use of the structures on the property will be for in-residence treatment of persons recovering from dependency on alcohol and chemical substances. These individuals fall within the scope of several federal anti-discrimination laws. [citing the ADA, Sec. 504 of the Rehabilitation Act, and the Fair Housing Act and stating that '<u>both Acts expressly cover participants in supervised rehabilitation programs for dependency on alcohol and chemical substances</u>. Persons in recovery from alcohol and chemical dependency are members of a protected class under federal anti-discrimination housing laws as well.']. Individuals participating in supervised rehabilitation programs are part of the special needs population afforded protections under the Lee Plan as well. The Lee Plan tasks the County with providing adequate housing sites for special needs populations through the zoning process. <u>In furtherance of the directive, housing for persons with special needs is permitted in all future land use categories that allow residential development</u>. [citing Lee Plan Policies and stating that 'The proposed residential treatment facility will serve individuals with disabilities. The ADA and Rehabilitation Act protect individuals who seek health or other services associated with drug rehabilitation and, by extension, programs that provide treatment services to those individuals.'] The residential recovery and treatment facility in a neighborhood setting achieves the County's goals of serving the special needs community.

(Doc. 1 at 37) (internal footnotes omitted) (underlining in original).[4] Exhibit C to the Hearing Officer's Recommendation lists a "Memorandum from Beverly Grady, with Roetzel and Andress, dated March 2, 2015, regarding Applicability of the Americans with Disabilities Act and the Fair Housing Act (multiple pages – 8.5"x11")" that was submitted as an exhibit at the hearing. (Doc. 1 at 70). A copy of this ADA Memorandum was not provided in this lawsuit. The Recommendation stated that a hearing would be held before the BOCC at which the Board "will consider the record made before the Hearing Examiner." (Doc. 1 at 75).

The BOCC did not follow the Recommendation and after a public hearing voted to deny the rezoning request on August 5, 2015. The Court has nothing before it showing

---

[4] Plaintiffs did not separate the exhibits attached to the Complaint into separate documents in CM/ECF. This caused the Complaint (Doc. 1) to total 124 pages although the body of the Complaint itself is only the first 25 pages. Therefore, the Court's citations are to the page number assigned by CM/ECF at the top of the document.

3

that the BOCC discussed the impact of the ADA at the hearing or made its decision after considering the ADA and its requirements.

On May 16, 2016, the zoning applicants filed a Petition for *certiorari* with the Circuit Court.[5] In their Petition, Plaintiffs devote one paragraph to the ADA, stating: "In addition, the County decided Petitioner's application for a substance abuse detoxification facility because of a community opposition to people in recovery from drug and alcohol addiction (the 'Recovery Community'), a legally protected class under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*" (Doc. 20-1 at ¶ 14). In a footnote to paragraph 14, Plaintiffs state:

> Under the ADA, persons in recovery and/or undergoing any form of treatment from alcohol or substance abuse are considered disabled and thus entitled to special status as a protected class. *See Jeffrey O. v. City of Boca Raton*, 511 F. Supp. 2d 1339, 1357-7 (S.D. Fla. 2007); *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 336-40 (6th Cir. 2002); *Innovative Health Sys. v. City of White Plains*, 117 F.3d 37, 48-49 (2d Cir. 1997), abrogated on other grounds as stated in *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001); 42 U.S.C. § 12210(b). Providers of detoxification services such as Petitioners, who provide services to qualified individuals with disabilities such as recovering addicts, have standing to challenge adverse local government zoning decisions under the ADA.

(Doc. 20-1 at n.2).

Nearly one month later, on June 10, 2016, Plaintiffs' counsel requested a "reasonable accommodation" from Lee County by sending a letter requesting a "reasonable accommodation administratively to treat the proposed use as a permitted use in the AG-2 zone or, in the alternative, to rezone the property to CFPD and treat the

---

[5] "*Certiorari* is the proper method to review the quasi-judicial actions of a board of county commissioners; whereas injunctive and declaratory suits are the proper way to attack a board's legislative actions." *Koziara v. City of Casselberry*, 239 F. Supp. 2d 1245, 1256 (M.D. Fla. 2002).

proposed use as a permitted one." (Doc. 1 at ¶ 84; Doc. 1 at 118-24). On August 25, 2016, Lee County denied the accommodation request.

On August 9, 2017, the Circuit Court denied the Petition for *certiorari*, upholding the decision to deny the rezoning application because there was competent, substantial evidence to support the BOCC's findings. In its 18-page Order, the Circuit Court stated that there were several claims made in the Petition. The one relevant for our purposes here: "Petitioners also allege that the Commissioners denied the application as a result of community opposition to the proposal, in direct violation of the rights of people in recovery from drug and alcohol addiction, who are a legally protected class under the Americans with Disabilities Act (Ground 4)." (Doc. 20-2 at 2). In addressing this claim, the Circuit Court found the following:

> 37. In Ground 4, Petitioners allege that the Commissioners denied the application as a result of community opposition to the proposal, in direct violation of the rights of people in recovery from drug and alcohol addiction, who are a legally protected class under the Americans with Disabilities Act. Respondent counters that 'in some instances, lay testimony can be helpful on factual matters affecting the property.' Motion, p. 29.
>
> 38. However, as discussed in one of the claims above, the Board was aware that it could not simply deny the application simply because members of the community opposed the proposed use, and took steps to instruct the public not to waste time at the hearing with comments that amounted to mere dislike at the thought of having the facility in the community. Commissioner Manning specifically initiated a conversation with the County Attorney on what opponents would have to demonstrate in order for the Board to deny the application, before explaining:
>
>> Okay. And there was a broader intent here. This little dialogue that we've had was intended also to be heard by the opponents and their attorneys so that they might not waste their time talking about – I just don't like this project in my neighborhood – to deal with specific legal points that would give us a basis for a decision other than approval.

5

> Moreover, the Board understood that the potential for crime could not be a basis for denying the application. R. 1262. The public had the right to speak, as is reflected in the Lee County Administrative Code, AC-2-7, 2.2. The dialogue with the County Attorney at the beginning of the hearing underscores that the Board understood that it had to have a more solid reason than 'we don't want it here' if it was going to deny the application. As has also been discussed above, the Board denied the application because it would result in the encroachment of commercial uses into an existing residential area; it was incompatible with and not an acceptable transition into the current low density residential area to the south; it was not consistent with the surrounding land uses; it would result in a decrease in appraised property values for surrounding properties; the uses requested were not similar to and did not already exist in the surrounding area; it would not have a positive or neutral impact on the surrounding community; and no adequate conditions could be devised to address the potential impacts of the proposed request on the surrounding residential neighborhoods. Considering the record of the Commissioner's Hearing as a whole, and aware that the Board has the authority to reject the Hearing Examiner's recommendations, there is competent, substantial evidence to support the Board's findings. Ground 4, therefore, is DENIED.

(Doc. 20-2 at ¶¶ 37-38).

The applicants next filed a Petition for Writ of *Certiorari* with the Second District Court of Appeals to quash the Circuit Court's decision. In that Petition, Petitioners state that "the County Commission's denial of Petitioners' application was due to discriminatory community opposition to people in recovery from drug and alcohol addiction, a legally protected class under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*" (Doc. 20-3 at 6). On April 20, 2018, the Second District Court of Appeals denied the Petition *per curiam* without explanation. (Doc. 20-5).

Plaintiffs initiated this case on August 1, 2019 by filing a one-count Complaint under the ADA (Doc. 1) challenging the County's application of the zoning code and its failure to provide a reasonable accommodation; specifically:

> The County's application of its zoning code to prevent use of the Kimberly ReGenesis Center by Plaintiffs' patients, and the denial of its request for a reasonable accommodation, constitute discrimination under Title II of the

ADA. These acts were taken with the intent to discriminate against, and had the effect of discriminating against, persons in recovery and those who provide services to them, namely Plaintiffs and their prospective residents.

(Doc. 1 at ¶ 95).

Plaintiffs seek three forms of relief from this Court: (1) **declaratory relief** – that the Court "find and declare that the County's effective refusal to approve the proposed use violates the ADA"; (2) **injunctive relief** – that the Court "issue a permanent injunction enjoining the County to grant Plaintiffs' reasonable accommodation request and from continuing to violate the ADA" and "[o]rder the County to, promptly and without delay, approve Plaintiffs' zoning application under the current zoning structure or, in the alternative, grant its requested accommodation"; and (3) **compensatory damages**[6] – "[a]ward Plaintiffs damages for the harm they experienced as a result of the County's discriminatory conduct." (Doc. 1 at 24).

## DISCUSSION

Title II of the ADA prohibits disability discrimination in public services furnished by governmental entities. *See* 42 U.S.C. §§ 12131-12165. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under Title II, "[a] plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations." *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009); see *Schwarz v. City of Treasure Island*, 544 F.3d 1201,

---

[6] To prevail on a claim for compensatory damages under the ADA, a plaintiff must show that a defendant violated his rights and did so with discriminatory intent. *McCullum v. Orlando Regional Healthcare Sys., Inc.*, 768 F.3d 1135, 1146-47 (11th Cir. 2014).

1212 (11th Cir. 2008) (stating that the ADA "recognizes disparate treatment and reasonable accommodation theories"); *see also* 28 C.F.R. § 35.130(b)(7).

### A. *Rooker-Feldman*

Following the Supreme Court's guidance, in recent years the Eleventh Circuit has made clear that the *Rooker-Feldman* doctrine, which is a limitation on jurisdiction designed to ensure that federal courts do not impermissibly review decisions of the state courts, is a narrow one. See *Target Media Partners v. Specialty Marketing Corp.*, 881 F.3d 1279, 1285-86 (11th Cir. 2018). In *Exxon Mobil Corp. v. Saudi Basic Indus Corp.*, the Supreme Court reigned in the usage of *Rooker-Feldman*. 544 U.S. 280, 284 (2005) (("[T]he [*Rooker-Feldman*] doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases."). Following *Exxon Mobil*, the Eleventh Circuit has "hewn closely to the language of *Exxon Mobil*," and "we now apply *Rooker-Feldman* to bar only those claims asserted by parties who have lost in state court and then ask the district court, ultimately, to review and reject a state court's judgments." 881 F.3d at 1285-86.

In determining whether claims qualify for *Rooker-Feldman's* jurisdictional bar, the Eleventh Circuit has directed district courts to "consider whether a claim was either (1) one actually adjudicated by a state court or (2) one 'inextricably intertwined' with a state court judgment." *Target Media Partners*, 881 F.3d at 1286 (citing *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (*per curiam*)). "And we have continued to describe a claim as being 'inextricably intertwined' if it asks to 'effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* However, a federal claim is not "inextricably intertwined" with a state court

judgment when there was not reasonable opportunity to raise the claim. "Thus, the class of federal claims that we have found to be 'inextricably intertwined' with state court judgments is limited to those raising a question that was or should have been properly before the state court." *Id.*

The Eleventh Circuit has expanded on the extent of a connection between the federal claims and the state court judgment to meet the "inextricably intertwined" standard required for *Rooker-Feldman* purposes, noting that it is not just any interconnection.

> . . . [T]he question posed to the federal court must be intertwined with the 'state court judgment' not only to the extent that it involves the state court proceedings but also to the extent that a *determination* reached by the state court would have to be relitigated in federal court. It is not the factual background of a case but the judgment rendered – that is, the legal and factual issued decided in the state court and at issue in federal court – that must be under direct attack for *Rooker-Feldman* to bar our reconsideration.

*Target Media Partners*, 881 F.3d at 1287 (emphasis in original).

In this case, the timing of Lee County's denial of Plaintiffs' request for a reasonable accommodation means that it escapes the *Rooker-Feldman* bar. Plaintiffs' request for a reasonable accommodation was made on June 10, 2016, which was *after* the BOCC's zoning decision and *after* Plaintiffs' request for first-tier *certiorari* review to the Circuit Court. "In cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a specific demand for an accommodation." *Rylee*, 316 F. App'x at 906. Here, the specific demand (and denial) that triggers a claim under the ADA was not made until after the state courts had initiated review of the zoning decision, therefore, *Rooker-Feldman* does not apply. "*Rooker-Feldman* is not a bar to jurisdiction where an issue did not figure, and could not reasonably have figured, in the state court's decision." *Target Media Partners,*

881 F.3d at 1286-87 (quoting *Wood v. Orange Cty.*, 715 F.2d 1543, 1547 (11th Cir. 1983)). At bottom, there was no opportunity to complain about the County's denial of the reasonable accommodation request in the state court proceedings.

But Plaintiffs do more here than just complain about the denial of a reasonable accommodation. Plaintiffs also allege that the County's application of its zoning code to deny the use of the property as a rehabilitation center constituted intentional discrimination under the ADA. (Doc. 1 at ¶ 95). Even so, Plaintiffs assert that they had no avenue on *certiorari* review to argue and obtain a determination that the County was liable for discrimination and compensatory damages under the ADA or that Plaintiffs were entitled to injunctive and declaratory relief.

The Circuit Court has no jurisdiction to make factual findings or enter a judgment on the merits of the underlying controversy, and it may not enter injunctions or award damages. The Circuit Court, sitting in its appellate capacity, cannot reweigh the evidence, draw different inferences, or substitute its judgment. Rather, "[c]ircuit court review of such action, known as 'first-tier' review, is limited to determinations whether (1) procedural due process was accorded in the administrative proceeding; (2) the essential requirements of law were observed in the administrative proceeding; and (3) the administrative findings and judgment are supported by competent substantial evidence."[7] *Clay Cty. v. Kendale Land Dev., Inc.*, 969 So. 2d 1177, 1180 (Fla. Dist. Ct. App. 2007). The Circuit Court could only "quash" the County's zoning decision, sending the matter back to where it was before the initial quasi-judicial order or decision was entered. *Id.* at 1181. *See also Miami-Dade*

---

[7] The Second District Court of Appeal's review is even more limited to determining only "whether the trial court (1) afforded due process and (2) observed the essential requirements of law." *Randall v. Fla. Dept of Law Enforcement*, 791 So. 2d 1238, 1240 (Fla. Dist. Ct. App. 2001).

*Cty. v. Omnipoint Holdings, Inc.*, 863 So. 2d 195, 198 n.2 (Fla. 2003) ("An appellate court has no power in exercising its jurisdiction in *certiorari* to direct the respondent to take any particular action. It can only quash the order or decision under review and remand for further proceedings.").

The Court agrees with Plaintiffs that the relief they are requesting in this case would not require the Court to determine that the state court decision was wrong or to void the state court's ruling. Plaintiffs' requested relief in this case could not have been afforded by the state court, bringing this case outside of *Rooker-Feldman*'s jurisdictional bar.

### B. Standing

Article III standing is a prerequisite to a federal court's exercise of subject-matter jurisdiction." *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018), and the Eleventh Circuit has repeatedly held "standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Dillard v. Baldwin Cty. Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000).

Defendant argues that Plaintiffs fail to establish standing to bring their claims for two reasons: (1) Plaintiff Damascus Trading Company, LLC alleges no facts to establish that if the rezoning application had been approved it would have operated the substance abuse treatment facility on the property; and (2) Plaintiff Kimberly ReGenesis, LLC was not designated as an applicant on the rezoning request until after the request was denied and merely alleges that it has current and prospective patients who are qualified individuals with disabilities but provides no factual allegations to support this contention. Here, the Court finds that Damascus has met the requirements for standing, and if "we

have at least one individual plaintiff who has demonstrated standing" to seek each form of relief requested in the Complaint, "we do not need to "consider whether the other . . . plaintiffs have standing to maintain the suit." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264 & n.9 (1977); *see also Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650-51 (2017). Therefore, the Court need not consider the standing arguments raised with regard to Plaintiff Kimberly ReGenesis.

### 1. Standard

Motions which raise the lack of standing attack the court's subject matter jurisdiction and are therefore considered pursuant to Rule 12(b)(1). *Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003). Rule 12(b)(1) motions challenging the subject matter jurisdiction of the court come in two forms, a "facial" attack motion and a "factual" attack motion. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). A facial attack challenges subject matter jurisdiction based on the allegations in the complaint, and the court takes the allegations in the complaint as true in deciding the motion. *Id.* The complaint may be dismissed for a facial lack of standing only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Jackson v. Okaloosa Cty.*, 21 F.3d 1531, 1536 n.5 (11th Cir. 1994) (citation omitted). Defendant appears to be making a purely facial attack on the Complaint, arguing that Damascus fails to sufficiently allege an injury-in-fact that would establish Article III standing to proceed as the Complaint makes no allegations that Damascus has ever operated a treatment center or would do so if the rezoning application had been approved.

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Each element is an indispensable part of the analysis and the party invoking federal jurisdiction (Plaintiffs here) bears the burden of establishing these elements. *Id.* "While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008) (citation omitted).

### 2. Injury in Fact

In analyzing standing in this case, the Court finds instructive an analogous case from the Eleventh Circuit, *Aaron Private Clinic Management LLC v. Berry*, 912 F.3d 1330 (11th Cir. 2019). In *Aaron*, plaintiff had made preliminary plans to operate a methadone clinic but was denied licensure under Georgia law. Plaintiff sued, alleging that the Georgia licensure statutes are facially invalid because they violate Section 504 of the Rehabilitation Act and Title II of the ADA. Plaintiff filed on its own behalf and on behalf of its prospective patients who are opiate-addicted and are qualified disabled under the ADA. *Id.* at 1333. Aaron requested a permanent injunction enjoining defendants from continuing to violate the ADA and Rehabilitation Act by "denying or delaying [Aaron's] ability to locate an [opioid-treatment program]" in Georgia, and a declaration that the challenged statutes are void and unenforceable. *Id.* "And Aaron alleges in each count of the complaint that the challenged statutes have caused it to expend additional time and

financial resources, to lose the opportunity to conduct its business, and to incur 'additional costs and expenses, attorney's fees, interest, and cost of capital' from 'interference and delays with planning, raising investment funds, hiring, and other normal processes related to opening a business.'" *Id.* at 1334. The district court dismissed the action for lack of standing and the Eleventh Circuit agreed because Aaron failed to plead facts establishing that it had directly suffered an actual or imminent injury in fact. *Id.* at 1335.

Here, Damascus contends that it has suffered two categories of injuries sufficient to establish standing under Article III. First, that Plaintiffs have suffered financial injury. That they have "expended time and financial resources" and "lost the opportunity to conduct their business." The second is that they have lost the opportunity to "provide a much-needed service." (Doc. 1 at ¶ 96).

### a. Financial Injury

"To adequately allege injury in fact, it is not enough that a complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements, since we should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none." *Aaron*, 912 F.3d at 1336 (internal quotations omitted). In *Aaron*, the court found that lost profits were insufficient to establish standing because plaintiff only alleged that it aspired to operate a methadone clinic someday but offered no facts to suggest that its plans were imminent or that Aaron had any concrete plans to bring the clinic into operation. *Id.* at 1336-37. The court noted that "ample precedent makes clear that Aaron must allege more than a bare intention to someday found a clinic" and to meet its burden it must point to "specific and concrete facts that suggest[ ] such a

14

substantial probability." *Id.* at 1337. "And, in other factual contexts, the Supreme Court has repeatedly explained that a plaintiff asserting that it would have engaged in an activity absent the challenged statute must establish that it was 'able and ready' to do so." *Id.*

The factual context in *Aaron* and this case are distinguishable. Here, the Complaint alleges that when the initial rezoning request was filed with the County, the Robin Atree Trust was the record owner of 6401 Winkler Road, and the Trust authorized Damascus (with others) to file and pursue rezoning. (Doc. 1 at ¶¶ 30-31). On November 15, 2015, Damascus took title to the subject property and, effective that date, designated Plaintiffs to be the applicants and to seek any necessary judicial relief with respect to the property. (Doc. 1 at ¶ 33). Damascus was a named Petitioner in the Circuit Court Petition (Doc. 20-1) and before the Second District Court of Appeals (Doc. 20-3).

Damascus has demonstrated that it had concrete plans to operate the treatment facility and is able and ready to do so. "A plaintiff alleging that it would have opened a business absent the challenged action must point to at least some facts suggesting a likelihood that its business would have come about absent the challenged action." *Aaron,* 912 F.3d at 1338. Damascus applied for rezoning, took significant steps and expended money in making its case to the County, and then took its case to the Circuit Court and the Second District Court of Appeals. In the proceedings before the County, Damascus submitted a Master Concept Plan (Doc. 1 at 64) to County officials, submitted evidence and testimony in support of the application to rezone, and worked with the County on deviations. The facts here are more in line with those in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 255-58 (1977), where plaintiffs met their burden because they had "entered into a 99-year lease and an accompanying

agreement to purchase the land for the proposed project, had hired an architect and produced detailed plans for the project, and had submitted a variety of detailed plans and reports as a part of a petition for rezoning." *Aaron*, 912 F.3d at 1337. At bottom, the Court finds that Damascus has met its burden to show a likelihood that the treatment facility would have come about absent Lee County's decision to deny its rezoning application.

### b. Opportunity to Provide a Much-Needed Service

The need for a treatment facility alone in the "absence of facts that would suggest [ ] readiness to supply that need" is not enough to show injury in fact. *Aaron*, 912 F.3d at 1338. However, as discussed above, Damascus has done more than just show a need for the treatment facility, it has shown a financial injury sufficient to satisfy the injury in fact element.

### 3. Fairly Traceable

The Court next determines whether Damascus' injury is fairly traceable to the County's actions. See *Bank of America Corp. v. City of Miami, Florida*, 137 S. Ct. 1296, 1302 (2017). This requirement is satisfied when the claimed injury flows from defendant's conduct. *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (2010). "Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." *Resnnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012).

Damascus' allegations are sufficient to "fairly trace" its injuries to the County's actions. Damascus alleges that the County denied its rezoning application in violation of the ADA. Thus, Damascus has satisfied this element of standing.

#### 4. Redressability

Finally, Damascus must demonstrate that its alleged injury is redressable by a favorable ruling or decision. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013); *Fla. Wildlife Fed'n, Inc. v. South Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1303-04 (11th Cir. 2011). The Eleventh Circuit has stated that redressability is "one of the more amorphous requirements of modern standing doctrine." *I.L. v. Alabama*, 739 F.3d 1273, 1279 (11th Cir. 2014). As a general matter, however, "[r]edressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Fla. Wildlife Fed'n*, 647 F.3d at 1303-04 (quoting *Mulhall*, 618 F.3d at 1290). Here, absent a court order, Damascus would be unable to operate the treatment facility as they wish due to the County's failure to rezone the property.

### C. *Res Judicata*

Defendants also argue that Plaintiffs' ADA claim is barred by *res judicata* and therefore fails to state a claim. "It is by now hornbook law that the doctrine of *res judicata* bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011). "In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court must apply the rendering state's law of preclusion." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011). "Under Florida law, *res judicata* applies where there is: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality [or capacity] of the persons for or against whom the claim is made; and (5) the

original claim was disposed on the merits." *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1074 (11th Cir. 2013) (internal citations omitted).

Here, the Court finds that Defendant's *res judicata* argument fails because the second element is not satisfied. Identity of the cause of action is a question of "whether the facts or evidence necessary to maintain the suit are the same in both actions." *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. Dist. Ct. App. 2005) (en banc and per curiam). As discussed above, the administrative proceedings and this case do not involve the same causes of action and the claims in this case and requests for relief were not addressed by the state court's decision. Plaintiffs raise claims and request relief that could not have been raised in the earlier proceedings and could not have been adjudicated by the state court. *See Harley v. Health Ctr. of Coconut Creek, Inc.*, 518 F. Supp. 2d 1364, 1369 (S.D. Fla. 2007) ("However, if the cause of action is not the same, *res judicata* will not bar issues which could have been raised in the prior suit but were not."). Therefore, the Motion to Dismiss based on *res judicata* grounds is denied.

### D. Collateral Estoppel

"Under Florida law, collateral estoppel applies when the identical issue has been litigated between the same parties and the particular matter was fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction." *Paresky v. Miami-Dade Cty. Bd. of Cty. Comm'rs*, 893 So. 2d 664, 665-66 (Fla. Dist. Ct. App. 2005). For the same reasons as discussed with respect to *res judicata*, collateral estoppel does not bar Plaintiffs' claim here.

Accordingly, it is now

**ORDERED:**

(1)     Defendant's Motion to Dismiss (Doc. 20) is **DENIED**.

(2)     Defendant is **DIRECTED** to file an answer to the Complaint by **February 28, 2020**.

**DONE** and **ORDERED** in Fort Myers, Florida this 14th day of February, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record