UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIMBERLY REGENESIS,
LLC, and DAMASCUS
TRADING COMPANY, LLC

        Plaintiffs,

v.                                   Case No.: 2:19-cv-00538-FtM-38NPM

LEE COUNTY,

        Defendant.

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFFS' FIRST MOTION TO COMPEL

Defendant, Lee County, hereby responds to Plaintiffs' Motion to Compel Responses, or Better Responses to Plaintiffs' First Request to Produce (Dkt. No. 56; First Motion to Compel). This case involves a narrow legal issue – whether Plaintiffs can establish a claim of discrimination under the ADA after litigating this issue in administrative hearings, the state circuit court, and the state district court of appeal.  Instead of serving narrowly tailored requests, Plaintiffs have served broad requests, seeking to conduct a fishing expedition in this matter.  Indeed, several of the requests ask for information over a 20-year, or in some cases, a 30-year, period of time. Additionally, Plaintiffs seek information through "the present" in these requests.  Yet, Plaintiffs delayed in filing this lawsuit until the eve of the four-year statute of limitations.  Their decision to delay the filing of this lawsuit for four years does not expand the scope of discovery in this case. This lawsuit relates to a decision made in August 2015, not a decision made in the present.

These requests clearly are nothing more than a fishing expedition, which seeks to increase the costs of this litigation.  Defendant served detailed objections and responses to these requests,

including citation to legal authority for its position, explaining the basis for its position, what information it agreed to produced, and what objections it was maintaining in response to these requests.  In addition, since serving the objections, Defendant also has attempted to confer with Plaintiffs by offering to produce additional, specifically defined information.  Plaintiffs, however, have refused to agree to these limitations, insisting on their broad and undefined requests.

Furthermore, although many of these requests are not relevant or discoverable under Rule 26(b), Defendant also explained to Plaintiffs that much of this information is publicly available through Defendant's resources on the internet.  Thus, Plaintiffs have this information equally available to them.  Prior to filing this lawsuit, Plaintiffs also served a public records request with some of the same requests and they received the responsive documents to this request. Nonetheless, Plaintiffs seek to cause an undue burden and expense on Defendant by requiring it to produce the same information in this lawsuit that it already provided in response to public records request as well as the information that is publicly available through Defendant's online resources.

Plaintiffs have failed to overcome Defendant's proper and well-founded objections. Therefore, Plaintiffs' motion must be denied.

## MEMORANDUM OF LAW

### I.    Background Regarding Plaintiffs' Claims

The property at issue is part of an unrecorded subdivision, which is named "Cold Saturday Farms," and is currently zoned Agricultural (AG-2). (Complaint (Dkt. No. 1; Compl.) ¶ 9).  In this action, Plaintiffs bring one claim, asserting that "[t]he County violated the ADA when it discriminated against Plaintiffs by voting to (a) reject the recommendations of County staff and the finding by its own Hearing Examiner to approve Plaintiffs' application for rezoning to allow its treatment center and detoxification facility and (b) deny Plaintiffs' application."  (Compl. ¶ 3).

2

Notably, as set forth in this paragraph, Plaintiffs do not allege that the denial of a request for accommodation is the basis for its claim.  (See id.).

Additionally, Plaintiffs admit that they did not file the application for rezoning. (Compl. ¶ 32).  Instead, they allege that TDM Consulting, Inc. (a non-party to this action) filed "an application for rezoning of the Subject Property from AG-2 to CFPD on November 5, 2014, for the proposed use." (Compl. ¶ 32).  The proposed use in this application for rezoning would include a residential treatment area, with a maximum of 90 beds, as well as nine dwelling units with individual kitchens, a central kitchen, religious facilities, recreational facilities, and 9,000 square feet of accessory medical office and accessory retail/food uses.  (Compl. ¶ 32).  Plaintiffs' contend that, after this application was filed, the "Lee County Staff" issued a report and a three-day hearing was held before the Lee County Hearing Examiner on February 25 and 26, 2015, and March 3, 2015.  (Compl. ¶¶ 36-37).  After the hearing, on May 13, 2015, the Lee County Hearing Examiner issued a report and recommendation to the Board of County Commissioners.  (Id. ¶¶ 42).  The Board of County Commissioners held a public hearing on August 5, 2015.  (Id. ¶ 45).  At the hearing, there were presentations made to the Board as well as an opportunity for public comment. (Id. ¶¶ 47-54).  The entire hearing was recorded and transcribed.  At the conclusion of the hearing, the Board deliberated and unanimously voted to deny the application for rezoning on August 5, 2015.  (Id. ¶ 56).  Despite the Board's denial of the rezoning request, Plaintiff KR currently provides housing at the property to people in recovery from substance use disorders.  (Compl. ¶ 24).

After this hearing, on September 2, 2015, Kevin A. Kyle, Trustee; Damascus Trading Company, LLC; and Thomas M. Mouracade filed a petition for relief under the Florida Land Use

and Environmental Dispute Resolution Act, Florida States § 70.51.[1]  (See Exhibit A).  This statute provides for a procedure whereby a mediation and subsequent fact-finding hearing is held by an independent special magistrate selected by the parties.  The parties selected Jane Lane, Esquire, to serve as the independent special magistrate.  (See Exhibit B).  The mediation commenced on January 26, 2016, and Plaintiffs requested a 60-day continuance to consider modifying the rezoning request from a CFPD (Community Facility Planned Development) to a RPD (Residential Planned Development).  (See Exhibit C).  As Plaintiffs rejected the proposed resolution, an evidentiary hearing was held on March 29, 2016.  (See Exhibit D).

After considering the evidence and testimony presented, the independent special magistrate concluded the Board's decision was not unreasonable and did not unfairly burden the subject property.  (Id.).  As a result, the special magistrate recommended that the Board's order remain undisturbed.  (Id.).  The Board then had 45 days to take action on this recommendation at a public hearing where the Board could accept it, reject it, or modify it.  The Board set a meeting for May 3, 2016, to consider the special magistrate's recommendation.  (See Exhibit E).  However, the day before the public hearing, the petitioners, include Plaintiff Damascus, voluntarily dismissed the proceeding under § 70.51, which cancelled the Board's hearing and closed the proceeding under § 70.51.  (See Exhibit F).

On May 16, 2016, Plaintiffs filed a petition for certiorari with the circuit court.  (See Motion to Dismiss (Dkt. No. 20) Ex. A).  In this petition, Plaintiffs argued that the Board departed from the essential requirements of law when it denied the rezoning application.  (Id. ¶¶ 10, 55).  They also alleged that the Board's decision was not supported by substantial competent evidence and

---

[1] Although Damascus Trading Company was identified as a petitioner in this request on September 2, 2015, Plaintiffs allege that Damascus did not take title until November 15, 2015.  (Compl. ¶ 33).  Plaintiffs contend that, effective November 15, 2015, Damascus designated Plaintiffs to be the applicants for the rezoning request.  (Id.).  At that point, however, the Board already had made the decision to deny the rezoning application. (Compl. ¶ 56).

Plaintiffs were denied due process.  (Id. ¶¶ 12-13).  Finally, they alleged that County denied the rezoning application because of community opposition to qualified individuals with disabilities.  (Id. ¶ 14).  The circuit court rejected all of these arguments on August 10, 2017, when it denied the petition for certiorari and upheld the Board's denial of the rezoning application.  (Motion to Dismiss Ex. B).

After filing a petition for certiorari challenging the Board's August 5, 2015, decision and prior to the circuit court's ruling, Plaintiffs sent a letter to the County on June 10, 2016, requesting that the County allow Plaintiffs' proposed use in AG-2 or rezone the property to CFPD.  (Compl. ¶ 84).  This is the same relief sought in the application for rezoning that was denied by the Board on August 5, 2015; the same relief sought in the request under § 70.51, which Plaintiffs elected to voluntarily dismiss; and the same relief sought in the petition for certiorari pending before the circuit court.   Nonetheless, Plaintiffs contend that this letter was a "request for reasonable accommodation" under the ADA.  (Compl. ¶ 84).  On August 25, 2016, the County responded to this letter by denying the relief sought in this letter and explaining the basis for this decision. (Id.).

On September 7, 2017, Plaintiffs exercised their right to seek second-level appellate review of the circuit court's order when they filed their Petition for Writ of Certiorari in the Second DCA.  (Motion to Dismiss Ex. C).  Specifically, they "argued that the County Commission's denial of Petitioners' application was due to discriminatory community opposition to people recovery from drug and alcohol addiction, a legally protected class under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*"  (Id. at 6).  The Second DCA rejected Plaintiffs' arguments and denied the petition for certiorari, upholding the circuit court's order, on April 20, 2018.  (Motion to Dismiss Ex. E).

More than a year later and four days prior to the expiration of the statute of limitations

under the ADA, Plaintiffs filed the instant lawsuit challenging the Board's decision on the rezoning application on August 5, 2015.  (Compl. ¶ 3).

## II.   Plaintiffs' Public Records Request and Publicly Available Information

On May 25, 2016, Plaintiffs made an expansive public records request of the County.  (See Exhibit G).  Specifically, this request sought e-mail communications; calendars and visitors logs for the commissioners; phone records; "any communications" regarding Plaintiffs with any member of the public; "any communications" with Plaintiffs or their employees; and "all documents provided to or created by Lee County from 1990 to the present, relating to the County's implementation of the Fair Housing Amendments Act and the Americans with Disabilities Act. (See id.).  These requests also are encompassed in Request Nos. 6, 16, 17, 18, 19, 20, and 21 in this First Motion to Compel.

On May 26, 2016, the County acknowledged receipt of the public records request and provided a link to the lobbyist logs for the commissioners and staff.  (See Exhibit H).  Indeed, all of the lobbyist logs for the commissioners and other employees who are required to retain them under Lee County Ordinance 03-14 are available online. (See https://www.leeclerk.org/departments/minutes/lobbyist-information).  On June 1, 2016, the County requested clarification regarding the other information sought in this public records request. (See Exhibit I).  In particular, it explained that this request sought e-mail communications regarding all employees of Lee County (the same as Plaintiffs' requests in this motion) and would require a search of each individual mailbox for approximately 2,500 employees. (See id.). Plaintiffs responded by limiting the e-mail search request to employees of Lee County Development Services and Lee County Attorney's Office.  (See Exhibit J).  It also limited the request for phone records, calendars, and visitors' logs to the commissioners and their assistants.

(See id.).  The County requested a deposit, which was paid for by Plaintiffs' counsel.  (See Exhibit K; Exhibit L).  In response, the County produced the requested records, including the zoning file for the subject property (see Exhibit M), the documents related to the implementation of the FHA and ADA (see Exhibit N), and the emails and calendars (see Exhibit O; Exhibit P).  The e-mail search consisted of a search of 157 email accounts over three-year period of time. (See Exhibit K).

The County also maintains a wealth of information related to its land development and zoning process online.  First, The Lee Plan, which is the County's comprehensive plan for growth in unincorporated Lee County,[2] is available at https://www.leegov.com/dcd/planning/leeplan.  The document available online, which is searchable and hyperlinked (both internally and to applicable ordinances), also contains a chronology of all adopted amendments to the Lee Plan.  (Id.).  This link also provides access to the appendix, tables, and maps as well as links to recent ordinances enacted related to the plan.  (Id.).  It also provides access to comprehensive plan amendments under review.  (Id.).

Next, the County's Land Development Code is available at: https://library.municode.com/fl/lee_county/codes/land_development_code.  This site provides access to the entire land development code for the County.  (Id.).  It contains the current land development code as well as the supplements and amendment dating back to April 18, 2012.  (Id.).  It is fully searchable and hyperlinked.  (Id.).  The County's resources also provide a link to the annotations and amendments under review.  (Id.).

The County provides access to its online database of records regarding building services, code enforcement, contractor licensing, zoning (including planned development and requests for

---

[2] Objective 5.1.5 was referenced and discussed in the Board's August 5, 2015, decision.  Additionally, Objective 135.6 provides for accommodations for those individuals with disabilities.  Both of these provisions as well as all other provisions of The Lee Plan are accessible at this link.

relief under § 70.51), development services, planning, natural resources, utilities, and department of transportation. (See https://accelaaca.leegov.com/aca/; https://www.leegov.com/dcd/eServ).  It also allows a global search to be conducted of all of these departments by case number, address, strap number, or license number.  (Id.).  For example, this database shows all of the code enforcement complaints regarding the subject property and the results can be downloaded into an Excel file.  (Id.).  It also allows for searches of zoning applications by several different criteria, including record type and outcome, address, and name of business.  (Id.).  As the County's website explains, this online portal "offers 24/7 online services to interact with the County's permitting system."  (Id. at https://www.leegov.com/dcd/eServ).  The County's zoning process is explained in detail at:  https://www.leegov.com/dcd/zoning, which also provides a list of applications currently under review.

As Plaintiffs are aware, the zoning case files also are available online.  This information is available at: https://www.leegov.com/dcd/zoning/zsearch/cases.  Thus, the database can be used to locate zoning cases and the zoning case file is available via this link.  The website explains how these two databases work together to provide information to the public.  (Id.).  The zoning case files can be searched by project name or case number, which are both available in the database search.  (Id.).  The County's document search also provides access to zoning resolutions and hearing examiner decisions and recommendations. (Id. at https://www.leegov.com/dcd/document-search).

Finally, the County also provides access to a number of different maps, including its zoning maps.  The maps are available at: https://www.leegov.com/gis/maps.  It has an interactive zoning map available at: https://leegis.leegov.com/LeeSpInS/.

Defendant explained all of these available online resources during the conferral regarding

Plaintiffs' First Motion to Compel.  Plaintiffs asserted, however, that Defendant had an obligation to re-produce the documents already provided in response to the public records request as well as produce copies of the documents maintained electronic on its website.  As set forth below, Plaintiffs' broad requests do not seek relevant information under Rule 26(b) nor do they seek information that is proportional to the needs of the case.

Nonetheless, even if the Court were to set aside these standards, Plaintiffs otherwise have equal access to the information that they are seeking through these public resources.  It is unduly burdensome to require the re-production of information previously provided as well as information that is publicly available to Plaintiffs.  See Rule 34(b)(2)(E) ("A party need not produce the same electronically stored information in more than one form."); Thomas v. The City of Jacksonville, No. 3:13-CV-776-J-39PDB, 2014 WL 12708970, at *1 (M.D. Fla. July 16, 2014) (But "[i]t is well established that discovery need not be required of documents of public record which are equally accessible to all parties."); see also Amerisure Ins. Co. v. FCCI Ins. Co., No. 8:18-CV-3042-T-24SPF, 2019 WL 8358710, at *3 (M.D. Fla. Nov. 6, 2019)("Plaintiffs need not produce those documents that are public record and equally accessible to FCCI/NTIC as they are to Plaintiffs").  Thus, contrary to Plaintiffs' assertion (First Motion to Compel at 8), Defendant is not required to produce documents, such as those identified above, that are equally accessible and publicly available.

## III.    The Relevant Period of Time

For most of the requests, Plaintiffs contend that the relevant period of time is 2014 to the present.  However, this time period is vastly overbroad.  Based on Plaintiffs' Complaint, they are challenging the Board's decision on August 5, 2015.  (See Compl. ¶ 3).  Setting aside the fact that Plaintiffs allege that they did not have title at the time of that decision (see Compl. ¶ 33), at most,

the relevant period is from the date of application (November 5, 2014) until the Board's decision on August 5, 2015. (Compl. ¶¶ 32, 56). Although Plaintiffs do not allege that the ADA violation is the failure to grant Plaintiffs' request on June 10, 2016 (see Compl. ¶ 3), even if the Court considers that request, it only adds the period of June 10, 2016, until August 25, 2016 (the date of the response) to the relevant period. Plaintiffs have not and cannot articulate any relevance for the period after August 25, 2016. Merely because Plaintiffs delayed in filing this action for four years does not render that period of time part of the relevant period. Moreover, as addressed below, many of Plaintiffs' request well exceed the time period of 2014 to the present; yet, there also is no basis for these expansive requests in this case.

## IV.   Defendant's General Objections, Reservation of Rights, and Production of Documents

Plaintiffs object to Defendant's general objections and reservation of rights asserting that both must be struck or overruled. (First Motion to Compel at 5-6). First, there is nothing improper about Defendant's reservation of rights. Plaintiffs contend that this reservation "reserves all other objections." However, that is not accurate. Indeed, as reflected in the plain language of the reservation, this statement relates to the right to object to these documents at trial. It is clear from this reservation that no documents are being withheld in response to these requests under this reservation. Instead, Defendant explains that it may object to the introduction of any of these documents at trial, which it has a right to do, even though they have been produced in this case.

As Defendant explained in its conferral with Plaintiffs, the general objections are directed to the six pages of definitions and instructions in Plaintiffs' requests, which are then incorporated by reference into each request. (See First Motion to Compel Ex. 1). To the extent that the six-pages of instructions and definitions are intended to expand the scope of the requests as stated, Defendant has made these objections and incorporated them into its responses, just as Plaintiffs

have incorporated their six pages of instructions and definitions in their requests.  Defendant has not asserted boilerplate objections to these requests.  Instead, in response to the specific requests, it asserted specific objections, the basis for each objection, and whether it was withholding information in response to these requests.  When Defendant has agreed to produce documents in response to a request, it has specifically identified the documents that it has agreed to produce.  It is clear in Defendant's response whether the question has been fully answered or not.  Thus, Defendant's response is far from the boilerplate objections identified in the case law cited in the First Motion to Compel.

Defendant has produced the documents that it agreed to produce in addition to identifying the publicly available resources that Plaintiffs can access.  During the conferral of the parties on December 3, 2020, Plaintiffs did not continue to assert that they have not received Defendant's responsive documents.[3]

## V.    Plaintiffs' Specific Requests

In order to obtain discovery, it must be relevant and proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1).  The burden is on Plaintiffs, as the party seeking the discovery, to show the relevancy of the request.  Gonzalez v. RFJD Holding Co., No. 14-61041-CIV, 2014 WL 12600140, at *2 (S.D. Fla. Aug. 25, 2014); Robles v. RFJD Holding Co., No. 11-62069-CIV, 2013 WL 12383426, at *2 (S.D. Fla. Jan. 3, 2013).  The scope of discovery "is not so liberal as to allow a party to roam in the shadow zones of relevancy and to explore a matter which does not presently appear germane on the theory that it might conceivably become so."  Miljkovic v. Wallenius Wilhelmsen Logistics Americas, LLC, No. 3:12-CV-786-J-12MCR, 2013 WL 1787810, at *3 (M.D. Fla. Apr. 26, 2013).  In that vein, the Court has broad power "to regulate or prevent

---

[3] Therefore, Plaintiffs' argument regarding Request No. 8 is moot.

discovery even though the materials sought are within the scope of Rule 26(b)."  Fed. R. Civ. P. 26(b) Advisory Committee's Note (1970); see also Goodman v. Ga. S.W., 147 F. App'x 888, 889 (11th Cir. Sept. 6, 2005); Wright v. AmSouth Bancorporation, 320 F.3d 1198, 1205 (11th Cir. 2003).  In particular, discovery should be restricted when it is duplicative, redundant, or the burden outweighs the likely benefit.  Fed. R. Civ. P. 26(b)(2)(C).  With these principles, Defendant addresses each contested discovery request below.

### A.    Request No. 1

In this request, Plaintiffs purport to seek "witness statements" from January 1, 2014, to the present.  (First Motion to Compel at 7).  In response, Defendant agreed to produce the transcripts of the August 5, 2015, hearing before the Board as well as the transcripts of the three-day evidentiary hearing before the hearing examiner.  (Id.).  During the conferral, Defendant explained that there were no other witness statements taken by Defendant during the relevant period of time (November 8, 2014-August 5, 2015 and June 10, 2016-August 25, 2016).  Plaintiffs asserted during the conferral that "witness statement" refers to any email sent to any County employee regarding Plaintiffs.  This response explains precisely why it was necessary for Defendant to object to this vague and ambiguous request.  Indeed, as Defendant asserted, Plaintiffs apparently intend this request to mean any document that references Plaintiffs, which is not narrowly tailored or proportional to the needs of this case.  It would be unduly burdensome to require Defendant to search for any e-mail communication to any employee of Lee County from any member of the public, which is apparently now how Plaintiffs' interpret this request despite the argument in the First Motion to Compel.  As a result, Defendant has provided the information based on a reasonable interpretation of this request for the relevant period of time as set forth above.

### B.    Request No. 2

In this request, Plaintiffs seeks the county-wide zoning maps for 2015, 2016, and 2020. The county-wide maps are not relevant to any claim.  As set forth in the Complaint, Plaintiffs assert that this claim is about Defendant's denial of Plaintiffs' application for rezoning from AG-2 to CFPD to operate a detoxification facility.  The zoning maps for the entire county-wide area are not relevant to any claim.  Plaintiffs asserts that they are relevant to "comparing the proposed use with other existing uses in the neighborhood."  (First Motion to Compel at 8).  However, the county-wide area is not the neighborhood.  Thus, Plaintiffs' own argument does not support their request.  Nonetheless, the current county-wide zoning map made is publicly available and accessible from Defendant's website.  In addition, as Defendant explained during the conferral, it will agree to produce the zoning map from 2015 for the specific section, township, and range. Plaintiffs, however, refused to agree to this limitation.

## C.   Request No. 3 and 12

In Request No. 3, Plaintiffs make a broad request for any document "relating to or concerning" compliance with the FHA, ADA, the federal Rehabilitation Act, and any state law regarding fair housing or discrimination.  In Request No. 12, they seek any revisions to the LDC in the last 30 years to comply with the ADA or FHA.  These are vastly broad requests with no reasonable temporal limitation, which has no bearing on Plaintiffs' claims.  As Defendant set forth in its objections, due to the vague and broad nature of this request, it is impossible for Defendant to identify documents responsive to this request.  In addition, Plaintiffs have only brought this action under the ADA, but this request seeks information regarding a variety of different laws that have no bearing on Plaintiffs' claim.[4]  As set forth in the First Motion to Compel, Plaintiffs refuse

---

[4] Plaintiffs contend that these laws are interpreted in a similar manner to the ADA, but that assertion does not establish the relevance of this broad request.  Documents related to the FHA have no bearing on this claim under the ADA. Indeed, the FHA bars more than disability discrimination, but discrimination based on other protected characteristics that are not protected under the ADA, such as race.

to narrow, clarify, or define Request No. 3 except to eliminate employment policies, which is not

any significant clarification.  (First Motion to Compel at 9).  Plaintiffs assert that these requests

seek "implementation," "self-evaluation," and "transition plans" from 30 years ago.  Forward-

looking documents from 30 years ago do not have any relevance to Plaintiffs' claims here.

Plaintiffs only argument is that "[h]istory is always relevant in discovery in intentional

discrimination cases."  (First Motion to Compel at 10).  In support of this statement, Plaintiffs cite

to the <u>Arlington Heights</u> decision in a race discrimination case involving strict scrutiny.  (<u>Id.</u>).

More importantly, it is the historical background <u>of the decision</u>, not history in general, that the

Court found to be relevant.  (<u>Id.</u>).  Here, the Board did not rely on any of these documents in

making a decision.  The historical background of this particular decision started with the

application for rezoning on November 8, 2014, and concluded with the Board's decision on August

5, 2015.  These broad and expansive requests have no bearing on Plaintiffs' claim.[5]  In addition,

to the extent that Request No. 12 seeks the revisions to the LDC, those revisions are publicly

available dating back to 2012.  Plaintiffs have not articulated any relevance of a more expansive

request.

### D.    Request No. 4

Plaintiffs seek any certification the County made to HUD over a 15-year period regarding

its compliance with the FHA.  As Defendant explained in its objection, Plaintiffs have not brought

any claim under the FHA and these certifications have no relevance to any claim in this case.  In

the motion, Plaintiffs do not offer any argument to establish the relevance of this request.

### E.    Request Nos. 5, 10, 11, and 26

Plaintiffs seek every application for a permit, zoning approval, and/or rezoning for a

---

[5] Plaintiffs also sought some of this same information in response to the public records requests, which were provided to Plaintiffs more than four years ago.

14

number of different facilities and any "principal and material" documents reflecting community opposition.[6]   Additionally, in Request No. 26, they seek "all reasonable accommodations" sought in the last 10 years.   These requests are not limited to the rezoning sought here from AG-2 to CFPD.[7]   Instead, these requests seek documents on a county-wide basis for either a ten- or twenty-year period.   These requests do not seek relevant information or information that is proportional to the needs of this case.   Whether there has been an application in any part of the County over a 10- or 20-year period has no bearing on whether the County was required to grant this request in the residential area zoned AG-2.[8]   Plaintiffs assert that, if the County allowed community care homes to people without substance abuse disorders, then it would show discrimination.   However, that is not accurate.   The zoning must be similar in all material respects.   Lewis v. City of Union City, Georgia, 918 F.3d 1213, 1218 (11th Cir. 2019).   The use must be materially similar to Plaintiffs' proposed use for the same parcel.   Id.   There was no commercial use approved for this parcel by Plaintiffs or anyone else.   Indeed, Plaintiffs continue to use this parcel as a group home. (Compl. ¶ 24).   It does not matter if the County permitted another group home in a different zoning category to operate nor does it matter if there was any community opposition to that particular request.   It has no bearing on whether the County was obligated to grant the request here. Nonetheless, as the County explained during the conferral, the County searched its database to determine whether there were any other applications from AG-2 to CFPD during the period of

---

[6] Through the conferral, Plaintiffs asserted that they were limiting their requests to "principal and material" documents. However, when Defendant asked for a definition of this term, Plaintiffs could not provide one.   It does not appear that Plaintiffs provided any definition of this term in the motion.

[7] Furthermore, Request No. 11 appears to ask Defendant to produce documents to establish a negative.   Plaintiffs have not articulated any relevance for this request.   But, even if they had, it would be impossible for Defendant to identify documents showing a negative without reviewing every rezoning application for last 20 years.   Thus, this is an unduly burdensome request, especially when it will not yield any relevant information.

[8] Even if this request were limited to 6 years, as suggested in Plaintiffs' motion, it still does not cure this overbroad request seeking information outside of the particular zoning for the parcel at issue in this case and outside the relevant period of time for Plaintiffs' claim.

January 1, 2010, to August 5, 2015. Plaintiffs' application was the only one. To the extent that this request seeks Plaintiffs' application, it has been produced in response to Request No. 8. Defendant also explained the publicly available information, including the zoning database where Plaintiffs could obtain information regarding other zoning requests as well as a copy of the zoning file. Plaintiffs, however, continue to assert their entitlement to these requests.

      **F.**      **Request No. 6, 15, 17, 18, 19, 20, 21, and 22**

Plaintiffs seeks the "principal and material" notes or calendar entries from June 1, 2016, to the present regarding the request for accommodation in Request No. 6. Plaintiffs assert no argument in support of this request other than that they made a request for accommodation on June 10, 2016. (First Motion to Compel at 12). In Request No. 15, Plaintiffs seek the "principal and material" documents regarding the request for accommodation from June 10, 2016, to the present. Plaintiffs offer no argument as to why this request or the time period is relevant other than that this is a "central issue" in this case. As set forth above, Plaintiffs omitted this request when identify the basis for the claim in the Complaint. (See Compl. ¶ 3). Additionally, in Request Nos. 17, 18, 19, 20, 21, and 22, Plaintiffs seeks a variety of communications without defining what the specific employees of County involved in these communications. Plaintiffs also seek to expand this request beyond the relevant period of time as described above. Plaintiffs also fail to establish the relevance for any of these requests, including what relevance communications with other state or local agencies would have on Plaintiffs' claims.

The request for accommodation, as Plaintiffs characterize it, was denied on August 25, 2016. Plaintiffs present no argument for why documents after August 25, 2016, would be relevant. In addition, Plaintiffs already have received the calendars and lobbying logs for the commissioners in response to the public records requests. The other lobbying logs are publicly available.

Likewise, Defendant already performed a search of 157 e-mail accounts in response to Plaintiffs' request for email searches, which were produced more than four years ago.  Thus, while Defendant has fulfilled its obligation under any reasonable interpretation of these requests, as it explained during the conferral process, it will agree to perform a search of the following e-mail accounts: Audra Ennis, Anthony Palermo, Michael Pavese, Susan Hollingsworth, Pamela Houck, Paul O'Connor, Sam Lee, Susie Derheimer, Larry Kiker, Frank Mann, John Manning, Cecil Pendergrass, Brian Hamman, Robert Price, John Fredyma, Sharon Jenkins-Owen, Lili Wu, Charles Jakacki, Mary Gibbs, Richard Toms, Mark Trank, Robert Stewart, David Loveland, Shawn McNulty, and Dave Paschall to search for responsive calendar entries; notes; communications regarding Plaintiffs' June 10, 2016, request; or the subject areas in Request No. 17-20[9] during the relevant period of time identified above.[10]  Plaintiffs, however, rejected this proposed limitation.

### G.   Request No. 7 and 9

Plaintiffs served broad requests for any documents of history, interpretation, purpose, or enforcement of various ordinances and zoning districts.  These are expansive and undefined requests for documents as set forth in Defendant's objection.  Defendant's objection is not a boilerplate objection, but specifically identifies the deficiencies in these requests, which appear to seek any document commenting on these provisions by any employee of the County.  It is impossible for Defendant to identify the documents responsive to this request, even if Plaintiffs

---

[9] During the conferral, Plaintiffs agreed to define the "state of Florida employees and officials" as used in Request No. 19 to the Department of Children and Families, Agency for Healthcare Administration, and Department of Health. These limitations do not appear in Plaintiffs' motion.  Nonetheless, the "state of Florida employees and official" is too broad in order for Defendant to be able to identify any responsive documents.  Even as defined in the conferral, this request also is duplicative of Request No. 21 and 22.  Defendant should not be required to respond to duplicative requests.

[10] Defendant identified these individuals from a review of the zoning case file, code enforcement activity, and Plaintiffs' letter dated June 10, 2016.  Plaintiffs have not identified any other relevant individuals; instead, they rely on broad categories of employees for their requests.  Defendant already has produced in response to Request No. 8, Plaintiffs request on June 10, 2016, and Defendant's response on August 25, 2016.

had established the relevance of these requests, which they have not.  Plaintiffs have not even attempted to articulate the relevance of these requests.  Nonetheless, as Defendant explained to Plaintiffs, Defendant's land development code and its amendments since 2012 are publicly available.  Additionally, The Lee Plan and its amendments likewise are available online.  Plaintiffs, however, have refused to clarify, define, or withdraw these expansive requests.

### H.      Request No. 13

In this request, Plaintiffs seeks the "principal and material" documents regarding the factual basis for any denial of any allegation in the Complaint.  However, Defendant already agreed to produce in response to Request No. 8, the documents that it intends to use to support its defenses.  As set forth in its objection, this request is duplicative of Request No. 8.  Plaintiffs do not provide any argument to distinguish this request from Request No. 8.  It is unduly burdensome to require Defendant to respond to this duplicative discovery.

### I.      Request No. 14

Plaintiffs seek the resumes or CVs for the commissioners.  However, these documents are not relevant to any claim in this case.  Plaintiffs assert that they are relevant to conduct background investigations regarding the commissioners.   First, the positions previously held by the commissioners have no bearing any issue in this case.  The commissioners were elected by the citizens of Lee County to make the decision that they made in this case.  Moreover, the commission acts as a body, not individuals, at a duly-constituted public meeting, which is what occurred on August 5, 2015.  Plaintiffs already have the transcript of that hearing.  Thus, there is no basis to conduct any "background investigation" or otherwise fish for information regarding the commissioners.

### J.      Request No. 16

18

In this request, Plaintiffs seek the public reaction or complaints to Plaintiffs from January 1, 2014, to the present.  As set forth above, this time period is not relevant.  It simply does not matter what public reactions and comments were after the rezoning denial or the County's response on August 25, 2016.  These reactions or comments could not have been the basis for any of the challenged decisions in this case.  Any public reactions or comments at the Board hearing or the three-day hearing before the hearing examiner were captured in the transcripts of these hearings, which Plaintiffs already have.  Next, Plaintiffs fail to provide sufficient information for Defendant to identify any additional responsive documents.  Plaintiffs also do not identify from whom, to whom, or when these purported statements were made, which makes it impossible for Defendant to identify the documents responsive to this request.  Nonetheless, Defendant already conducted a search of 157 e-mail accounts in response to the public records request, which sought communications regarding several of the individuals who testified during the public hearings. Thus, it appears that Plaintiffs already have these documents for the relevant period, and this request appears to be duplicative of Request No. 17, which does specifically identify individuals. To the extent that this request is directed towards code enforcement complaints made regarding Plaintiffs, those documents are publicly available in the County's database as described above.[11] In their motion, Plaintiffs do not offer any argument as to why this vastly broad and undefined request is proper.

### K.      Request No. 23

This request seeks any communications with the hearing examiners on a number of broad

---

[11] For this same reason, Plaintiffs' request for any code enforcement complaints in Request No. 24 should be denied. This information is publicly available.  To the extent that Request No. 24 seeks any "police reports," the County does not have a police force as explained in the objection to this request.  Any request for police records should be directed to the agency or agencies that would have custody of those records.  The evidence considered by the Board in making its determination was presented during the public hearing on August 5, 2015.  Plaintiffs have a transcript of that proceeding as well as the zoning case file.

topics, including the land development code. This request would encompass nearly every communication with the hearing examiner or anyone employed in her office for a six-year period of time. Plaintiffs fail to establish the relevance for this request and merely assert it is a "narrow request." Defendant explained in detail in its objection why this request is vastly overbroad and does not seek relevant or discoverable information.

### L.     Request No. 25

In this request, Plaintiffs seek any video recordings of Plaintiffs from January 1, 2014, to the present. As Defendant set forth in its objection, Plaintiffs have not identified the specific subject matter or the individuals involved. Plaintiffs have not provided sufficient information for Defendant to be able to locate any responsive documents. Moreover, Plaintiffs have not articulated any relevance for this request in the motion. They merely assert that the time period is narrow and it seeks discoverable information.

## VI.   Conclusion

Based on the foregoing, Defendant respectfully requests that the Court deny Plaintiffs' Motion to Compel (Dkt. No. 56).[12]

Dated this 7th day of December, 2020.

Respectfully submitted,

_s/Sacha Dyson_____
GREGORY A. HEARING
Florida Bar No.: 817790
Gregory.hearing@gray-robinson.com
SACHA DYSON
Florida Bar No. 509191
sacha.dyson@gray-robinson.com

---

[12] Although Plaintiffs make a request for attorney's fees, they present no argument in support of that request. Even if the Court were to disagree with Defendant's position regarding these requests, Defendant asserts that an award of attorney's fees under Rule 37(a)(5) is not warranted as Defendant's position is substantially justified and Plaintiffs failed to confer in good faith as required by Rule 37(a)(5)(A). Indeed, as set forth herein, Defendant offered various compromises regarding these requests, which were rejected by Plaintiffs.

GRAYROBINSON, P.A.
401 E. Jackson Street, Suite 2700
P.O. Box 3324 (33601-3324)
Tampa, Florida 33602
Telephone:  (813) 273-5000
Facsimile: (813) 273-5145
COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of December, 2020, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of

electronic filing to the following:  James K. Green, Esq., Attorney for Plaintiffs.


_s/Sacha Dyson_____
Attorney

21