UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Fort Myers Division

Case No. 2:19-cv-538-FtM-38NPM

KIMBERLY REGENESIS, LLC, *et al.*,

Plaintiffs,

vs.

LEE COUNTY,
a Florida political subdivision,

Defendant.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LEE COUNTY'S MOTION FOR PROTECTIVE ORDER

Plaintiffs, Kimberly Regenesis, LLC, *et al.*, through counsel, file this Response in Opposition to Lee County's Motion for Protective Order ("Motion").

In its Motion, the County seeks to prohibit the deposition of two present County Commissioners and one former one, and to quash the subpoena *duces tecum* for records kept by former Commissioner Manning in his individual control. Motion, p.2. As will be demonstrated below, the County cites a slew of absolute and qualified immunity cases that apply to officials sued in their individual capacities who are therefore protected from discovery. Here, none of these commissioners is sued in any capacity. In fact, the Americans with Disabilities Act ("ADA") applies only to public entities, such as the County, and not officials of the entity. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 471–72 (4th

1

Cir. 1999).  The County has failed to demonstrate extraordinary circumstances based on specific facts that would justify such an order as to these witnesses.

## I.    PROCEDURAL BACKGROUND AND FACTS

### A.    Introduction

In this action, Plaintiffs assert claims under the ADA, 42 U.S.C. § 12101 *et seq*.  Plaintiffs allege that Lee County violated the ADA when (1) its Board of County Commissioners (the "Commission") denied Plaintiffs' application to rezone a parcel of land in Fort Myers, Florida to allow Plaintiffs to build a residential treatment center for people in recovery from substance use disorders and (2) the County denied Plaintiffs a reasonable accommodation.

On November 5, 2014, TDM Consulting, Inc., as Plaintiffs' agent, applied to rezone the property at 6401 Winkler Road from agricultural (AG-2) to Communities Facilities Planned Development (CFPD), in order to redevelop it into a residential treatment center.  Compl. [DE 1] ¶ 32.   Kimberly currently provides housing at that site to people in recovery but seeks to include a treatment component at the same location.  *Id.* ¶ 24.

On January 9, 2015, the Lee County Staff found the application sufficient; issued a thorough report recommending approval, with conditions; and concluded that the application was consistent with the Lee Plan and Land Development Code.  *Id.* ¶ 36.  The Lee County Hearing Examiner then held a three-day hearing, ¶ 37, and on May 13, 2015, recommended approval of the application, with conditions, including a reduction from 90 to 72 beds, *id.* ¶ 38.

She found that "[t]he applicant has proven entitlement to rezone the property to CFPD by demonstrating compliance with the Lee Plan, the LDC, and other codes and regulations" and made detailed findings in support. *Id.* ¶¶ 43, 44.  She found that the area is "one of mixed use, ... including schools, colleges, assisted living facilities, senior housing, medical offices, clinics, retail, etc." and that the "proposed use is compatible with and appropriate in, an intensely developed neighborhood within the County's urban core."  *Id.* ¶ 43.

The application, however, was met with significant opposition from people who did not want a substance abuse treatment facility in their neighborhood. Opponents "sent out over 6,400 mailers, about 2,500 emails, and obtained thousands of signatures on petitions denouncing the proposed Center and organized a Political Action Committee to support politicians opposed to the application. Exs. 1 and 2. The PAC placed radio ads, with the Lee County Sheriff urging the Commission to deny the application.  *Id.* ¶¶ 44, 81.

In the face of this organized opposition, the Commission held a hearing on August 5, 2015 to consider the Hearing Examiner's recommendation and decide whether to grant the application.  *Id.* ¶ 45.  After Plaintiffs presented an overview of the proposed facility and treatment services and a land use expert to discuss the plan, objectors presented their comments, which were hostile, prejudicial, and based on fear and ignorance rather than fact.  *Id.* ¶ 50.  The objectors, expressing NIMBY ("Not In My Backyard") comments, told the Commission that if the application were approved, children would not be safe, the patients could

be violent, might include pedophiles, and "are not in their right mind," the facility would "destroy the neighborhood," "[d]rug addicts will do anything and everything to get their needs met" and are "dangerous," the community would live in fear, there would be "crime and drugs" as a result, "unstable patients" would be "living in the midst of our neighborhood" and could "escape" (despite their voluntary admission status), "dangerous addicts" would "roam[] our neighborhood," and drug dealers would come "looking for selling opportunities." *Id.* ¶ 81. Further, as noted above, the neighbors claimed to have signed "**thousands**" of petitions opposing Plaintiffs' requested zoning. Tom Burt testimony at August 5, 2016 BOCC meeting. Ex. 2 at R-1202. (emphasis added).

At the outset of the hearing - prior to any testimony - Commissioner Manning announced that he would be producing competent substantial evidence adverse to the application and would then move to deny the application. *Id.* ¶ 46. When Plaintiffs' counsel asked what that evidence was, Manning said he would reveal his reasons at the end of the hearing. Counsel objected that the applicant was entitled to know and respond to his concerns, but Manning refused to reveal his reasons until after the public comment portion. *Id.* ¶ 54. Notably, none of the Commissioners disclosed, or was called upon to disclose, any *ex parte* communications before the Commission hearing.

At the close of the hearing, a motion was made to deny the application, and a discussion ensued among the Commissioners, who were searching for reasons to deny the application, including crime caused by such facilities (no such

evidence was presented); the diminished property value caused by such a facility (there was no evidence that property values would decrease), and compatibility issues, which had been rebutted by County Staff and Plaintiffs' experts. The Commission voted unanimously to deny the application. *Id.* ¶ 56.

**B. Background of Discovery Dispute**

Plaintiffs are seeking to depose three of the five County Commissioners, who are not named defendants and who sat in a quasi-judicial capacity when the Commission made its zoning decision on August 5, 2015, which Plaintiffs contend is at issue in this action. Plaintiffs also issued a subpoena *duces tecum* for former Commissioner Manning for documents in his individual control.

## II. STANDARDS FOR DECIDING PROTECTIVE ORDERS

### A. The complete prohibition of a deposition is an "extraordinary measure"

Courts regard the complete prohibition of a deposition as an "extraordinary measure which should be resorted to only in rare occasions." *Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998) (citing, *e.g.*, *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."). To prevent a deposition altogether, the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements. *See Alexander*, 186 F.R.D. at 74. In fact, "[t]he moving party has a heavy burden of showing 'extraordinary circumstances'

based on 'specific facts' that would justify such an order." *Id.* at 75 (citing *Prozina Shipping Co. v. Thirty-Four Automobiles*, 179 F.R.D. 41 (D. Mass. 1998)).

## B. There are no deliberative-process or testimonial privileges in discriminatory intent cases like this

Federal Rule of Civil Procedure 26(b)(1) allows a party to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). Whether a matter is privileged is "determined by reference to the Federal Rules of Evidence." *In re Int'l Horizons, Inc.*, 689 F.2d 996, 1002 (11th Cir. 1982).

Rule 501 of the Federal Rules of Evidence provides that:

The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise:
  • the United States Constitution;
  • a federal statute; or
  • rules prescribed by the Supreme Court.
But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.

Federal privileges against giving testimony are generally disfavored:

For more than three centuries it has now been recognized as a fundamental maxim that the public has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.

*Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (quoting *U.S. v. Bryan*, 339 U.S. 323, 331 (1950)). Thus, privileges excluding evidence are construed narrowly. *See*

*Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) (the "rules of privilege generally are looked on with disfavor by the federal courts").

Narrow construction is particularly appropriate for the deliberative process privilege. That privilege generally protects federal agencies against the discovery of communications that formed part of the agency's "decision-making process." *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993); *see also Nadler v. U.S. Dep't of Justic*e, 955 F. 2d 1479, 1490 (11th Cir. 1990) (the privilege "protects the internal decisions of the executive branch in order to safeguard the quality of agency decisions").

Since adopting the Federal Rules of Evidence, most federal courts weighing this privilege have concluded that it "was designed to apply when the decision-making process itself is not the issue being litigated. **If, instead, the subjective motivation of the decision-making agency is at issue, the privilege does not apply**." 3 J. McLaughlin, Weinstein's Federal Evidence § 501.04 [3] (6th ed. 2006) (emphasis added); *accord* 2 M. Graham, Handbook of Federal Evidence § 501:1 at p. 22 (6th ed. 2006) ("There is no deliberative process privilege in cases involving government misconduct.").

The District of Columbia Circuit explained why the privilege does not apply in such actions in the case of *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, *modified on rehearing*, 156 F.3d 1279 (D.C. Cir. 1998). In that dispute, the trustee in bankruptcy of an insolvent bank sued the FDIC for alleged fraudulent transfers that the FDIC had

made in concert with the Comptroller. When the trustee served a subpoena *duces tecum* on the Comptroller's Office, the latter objected based on the deliberative process privilege. 145 F.3d at 1423.

On appeal, the D. C. Circuit agreed that the deliberative process privilege is inappropriate "when a plaintiff's cause of action turns on the government's intent." *Id.* at 1424. The court explained:

> If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination. *See Crawford-El v. Britton,* 523 U.S. 574 (1998); *Webster v. Doe*, 486 U.S. 592 (1988). The Supreme Court struggled in *Crawford-El* and *Webster* with governmental claims that discovery in such a proceeding should be limited, but no one in any of these cases ever had the temerity to suggest that the privilege applied. The argument is absent in these cases because if either the Constitution or a statute makes the nature of governmental officials' deliberations *the* issue, the privilege is a *non sequitur*. The central purpose of the privilege is to foster government decisionmaking by protecting it from the chill of potential disclosure. If Congress creates a cause of action that deliberately exposes government decisionmaking to the light, the privilege's *raison d'etre* evaporates.

*Id.* (emphasis in original) (citations and footnote omitted).

Since this decision, other federal courts have held that the privilege does not apply when the government's intent is at issue. For example, in *U. S. v. Lake Cty. Bd. of Commissioners*, 233 F.R.D. 523 (N.D. Ind. 2005), the federal government brought an action under the Fair Housing Act (FHA) against the defendant county. During a county commissioner's deposition, the county's lawyer directed the deponent not to answer certain questions because of the deliberative process privilege.

Ruling on the United States' motion to compel, the district court held that "the deliberative process privilege yields 'when government misconduct is the focus of the lawsuit.'" *Id.* at 527 (quoting *Tri-State Hospital Supply Corp. v. U.S.*, 226 F.R.D. 118, 134-35 (D.D.C. 2005)). The court refused to engage in a balancing test to determine the privilege's extent, because "the dominant view" is that the privilege simply "does not apply when the government's intent is at issue." *Id.* at 527.

Similarly, in *Anderson v. Marion Cty, Sheriff's Dept.*, 220 F.R.D. 555 (S.D. Ind. 2004), the plaintiff sued his former governmental employer under Title VII and Section 1983 for race discrimination. When the plaintiff sought copies of files pertaining to himself and two similarly situated individuals, the defendants asserted the deliberative process privilege. The plaintiff then filed a motion to compel. The court agreed that "the deliberative process privilege is unavailable where ... the plaintiff alleges employment discrimination under .... 42 U.S.C. § 1983." *Id.* at 561. "Therefore, the deliberative process privilege is inapplicable and there is 'no need to engage in the balancing test applied in deliberative process cases.'" *Id.* (quoting *Office of the Comptroller,* 145 F.3d at 1425).

The deliberative process privilege protects government agencies' decision-making process by exempting from disclosure information "reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150 (1975); *see U.S. v. Farley*, 11 F.3d at 1389. The

privilege's rationale is that government officials "would hesitate to offer their candid and conscientious opinions to superiors or co-workers if they knew that their opinions of the moment might be made a matter of public record at some future date." *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 (5th Cir. 1981). These considerations do not apply to the specific deposition subjects at issue here.

## III. ARGUMENT

As set forth above, Plaintiffs allege that Lee County used its zoning code in a discriminatory fashion, with the intent of excluding them from the community, based in part on neighbors' animus toward persons in recovery in violation of the ADA. The ADA prohibits the County from using its zoning laws to exclude housing and treatment facilities for people with disabilities, including those in recovery. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725 (1995).

### A. Plaintiffs Are Entitled to Depose the Present and Former Commissioners

#### 1. The Commissioners Are Not Immune from Discovery, Because They Are Not Being Sued in Their Individual Capacities

The County argues that the Commissioners are immune from discovery, because the Board acted in its quasi-judicial capacity when it denied the rezoning petition and the Commissioners are "entitled to absolute immunity, which includes immunity from discovery." Motion, p.8. It first cites *Walgreen Co. v. Polk County*, 524 So. 2d 1119, 1120 (Fla. 2d DCA 1988), which has nothing to do with absolute immunity or any associated testimonial immunity.

It then cites *Butz v. Economou*, 438 U.S. 478 (1978), for the unremarkable propositions that "[j]udges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities," *id*. at 511, and that quasi-judicial immunity is appropriate in circumstances outside the judicial branch where the proceeding in question "shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Id. See also Cosby v. Lee Cty.*, 55 F. Supp. 3d 1393, 1399 (M.D. Fla. 2014).

Next, it argues that "if denied quasi-judicial immunity, the County Commissioners [sic] actions in the proceedings such as those underlying this case would result in claims for damages by individuals whose applications for rezoning are denied." Motion, pp.10-11 (citing *Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006)). *Dotzel* was a § 1983 action for damages against members of a township's board of supervisors in their individual capacities. This case, however, is not a suit for damages against the Commissioners in their individual capacities; nor could they be sued under the ADA, because the Commissioners are not public entities. *See Baird ex rel. Baird, supra*. *Dotzel* is therefore inapposite.

In any event, even if the Commissioners had absolute or qualified immunity, that does not render them immune from all discovery. The "right to immunity is a right to immunity *from certain claims*, not from litigation in general...." *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996) (emphasis added). "Granting qualified immunity on only one of the claims may reduce discovery but

it does not eliminate it." *McLaurin v. Morton*, 48 F.3d 944, 949 (6th Cir. 1995); *see also Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007) ("To the extent that [the defendant] is subject to discovery requests on claims for which she does not or cannot assert qualified immunity, such discovery requests do not implicate her right to qualified immunity."); *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987) (same); *Callahan v. Unified Gov't of Wyandotte County/Kansas City Kan.*, No. 11-2621, 2013 WL 2151579, at *2 (D. Kan. May 16, 2013) ("[The] contention that a non-party witness is immune from discovery merely because the witness is entitled to qualified immunity from suit is rejected."); *Rhodes v. Prince*, No. 3:05–CV–2343, 2008 WL 4493590, at *2 (N.D. Tex. Oct. 3, 2008) (denying motion to stay discovery where individual defendants did not establish the discovery sought by the plaintiff would in any respect be different if the individual defendants were mere fact witnesses).

### 2. The Commissioners Are Not Entitled to "Apex" Protection

The County also relies on various "apex" cases, such as *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993), that protect high-level governmental officials from depositions where they have no direct knowledge or responsibility for the challenged actions. "Whether an official is a 'high ranking government officer' ... is determined on a case-by-case basis." *S.E.C. v. Committee on Ways and Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 250 (S.D. N.Y. 2015).

This case differs from *In re United States*, in which David Kessler, head of the FDA, was asked to testify in a selective prosecution case. In that case, Dr.

Kessler did not assume the office of Commissioner until four years after the initial investigation upon which the case was based. Therefore, "he could not have been responsible for selectively prosecuting the defendant." *Id.* at 512–13.

Here, however, these Commissioners are not "high government officials" like the head of the FDA who had no personal knowledge of the events in question:

> *Kessler*, like many of the cases on which it relied, involved the head of an agency, a gigantic bureaucracy in need of continual oversight and management. There are multiple reasons to limit the availability of such persons to testify about matters of agency policy. First, such information can normally and easily be obtained elsewhere, as in *Kessler*. Second, the deprivation suffered by these persons' agencies and the government as a whole would be great if such persons had to respond to all subpoenas because (1) they oversee large, complex bureaucracies with many officials under them and (2) their agencies are involved in activities across the nation....
>
> These reasons do not apply with equal force to members of the House. Each individual member of the House oversees a staff, to be sure, but the size of that staff pales in comparison to that of an agency like the Food and Drug Administration or the EPA. The member's activities, localized as they are to his district and Washington, D.C., are far less likely to subject him to subpoena than the head of a major administrative agency, who oversees activities that occur throughout the nation. Simply put, a "federal common-law" rule such as the one used for agency heads seems inappropriate for members of the House when one considers the policy rationales behind the rule.

*In re Subpoena Ad Testificandum Issued to Representative Ted Yoho*, No. 1:16-CV-188, 2016 WL 3149728, at *1 (N.D. Fla. June 3, 2016) (holding that a state representative was not sufficiently high to warrant apex protections).

Defendant cites *City of Fort Lauderdale v. Scott*, No. 10-61122, 2012 WL 760743, at *2 (S.D. Fla. 2012), *Grochowski v. Clayton County*, 961 F.3d 1311, 1322 (11th Cir. 2020), and *Watson v. Szczepaniak*, No. 96-17290, 1997 WL

577222, at *1 (9th Cir. Sep. 12, 1997); *compare, Citigroup Inc. v. Holtsberg*, 915 So. 2d 1265 (Fla. 4th DCA 2005) (refusing to adopt the "apex doctrine"), Motion, p. 15, in an attempt to show that the Commissioners constitute the type of high ranking government official who merits heightened protection from deposition.

In *Scott*, the court held that the counter-plaintiffs failed to show that the city manager's deposition was necessary because they failed to show that lesser-ranking officials did not have the same information. Here, the County objected to Plaintiffs' Requests for Production 16-21 and Interrogatory 14 seeking information about the Commissioners' communications with opponents to rezoning and other entities. *See* Plaintiffs' Motion to Compel Responses, or Better Responses to Plaintiffs' First Request to Produce, DE 56, and Plaintiffs' Motion to Compel Answers and Better Answers to First Set of Interrogatories to Defendant, DE 57. In *Grochowski*, the Court held that further discovery would not have aided Plaintiffs' case to obtain discovery from a county commissioner about the County's decision-making process with respect to the jail's design or funding because the Plaintiffs failed to show that the jail's design or its funding and staffing levels were constitutionally deficient. 961 F.3d at 1322. Here, the Commissioners' *private* communications with neighbors, the Burts, and others go to the core of Plaintiffs' intentional discrimination claims. And, unlike *Watson*, where the plaintiff "failed to allege that the commissioners or the district manager had any personal information relevant to his case," *id.*, Plaintiffs have

made a sufficient showing here of personal information to overcome any heightened protections.

First, the Commissioners here have direct factual information pertaining to the important issues in this action. County staff and the County's hearing examiner recommended approval of the proposed zoning, yet the County Commissioners voted to deny. Opponents "sent out over 6,400 mailers, about 2,500 emails, and obtained thousands of signatures on petitions denouncing the proposed Center and organized a Political Action Committee to support politicians opposed to the application. Exs. 1 and 2 at R-1202. There was a PAC founded to oppose the proposed zoning. There were also television and other media ads against it, and pressure from Tom Burt, a politically powerful neighbor who was recently sanctioned in the amount of $358,815.17 plus expert fees for filing a frivolous *lis pendens* in a failed attempt to stop Plaintiffs' purchase of the property. Ex. 4. Plaintiffs are entitled to inquire what communications the Commissioners had with Mr. Burt, the PAC, the hostile neighbors, and among themselves off the record before and after voting to deny. Only the Commissioners know what was said to them outside of the Commission meeting.

Second, a county that caters to the "will of the people" may properly be held liable for intentional discrimination if it is shown that discriminatory animus was a significant factor in the public's position and that the official decision-maker was knowingly responsive to that position. *U.S. v. Yonkers*, 837 F.2d 1181, 1226 (2d Cir. 1987). *See also City of Cleburne, Tex. v. Cleburne Living*

*Center*, 473 U.S. 432, 448 (1985) (citizens' "[p]rivate biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect"); *A.F.A.P.S. v. A.R.P.E.*, 740 F. Supp. 95, 104 (D.P.R. 1990) ("if an official act is performed simply in order to appease the discriminatory viewpoints of private parties, that act itself becomes tainted with discriminatory intent even if the decision-maker personally has no strong views on the matter"); *Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 49 (2d Cir. 1997) (ADA). Since motive and intent are important to Plaintiffs' discrimination claims, Plaintiffs must therefore be given a sufficient opportunity to inquire into the basis of the County Commissioners' action.

Here, the County makes no claim that the Commissioners lack personal knowledge of relevant facts, nor does it provide an affidavit to that effect. The Commissioners' conduct and knowledge, along with that of the other commissioners, is highly relevant. Defendant has not met the least of its burdens.

Indeed, courts have time and again allowed the deposition of current and former high-ranking government officials upon a showing that the official has personal involvement or knowledge relevant to the case. *See, e.g., Energy Capital Corp. v. U. S.*, 60 Fed. Cl. 315, 318 (Fed. Cl. 2004) (permitting videotaped deposition of former Secretary of Housing and Urban Development upon showing of first-hand personal knowledge); *see also Toussie v. Cty. of Suffolk*, No. 05–1814, 2006 WL 1982687, at *2 (E.D.N.Y. July 13, 2006) ("Generally, the depositions of former government officials are granted where the official has

been personally involved in the events at issue in the case.") (citing *Gibson v. Carmody*, 1991 WL 161087, at *2 (S.D.N.Y. Aug. 14, 1991) (permitting deposition of former Police Commissioner upon showing of personal involvement)).

The County cites *Cosby v. Lee County*, 55 F. Supp. 3d 1393, 1399 (M.D. Fla. 2014), for the proposition that courts look to three factors in deciding whether to apply quasi-judicial immunity:

> (1) Are the official's functions similar to those involved in the judicial process?
> (2) Are the official's actions likely to result in damages lawsuits by disappointed participants? and
> (3) Do sufficient safeguards exist to protect against unconstitutional conduct?

*Id.* Motion, p.9.

As to factor (1), Plaintiffs agree that the Commissioners were involved in a quasi-judicial function. However, they were not subject to the prohibitions on *ex parte* communications applicable to judges. As to factor (2), this is not a damages case against the Commissioners in their individual capacities. In fact, in ADA cases such as this, individual officials are not covered entities and therefore cannot be sued for damages or injunctive relief. *See Baird ex rel. Baird, supra*. And, as to factor (3), this is not a constitutional challenge. As this Court observed in denying the County's motion to dismiss in this case:

> ... Plaintiffs do more here than just complain about the denial of a reasonable accommodation. Plaintiffs also allege that the County's application of its zoning code to deny the use of the property as a rehabilitation center constituted intentional discrimination under the ADA. (Doc. 1 at ¶ 95). Even so, Plaintiffs assert that they had no avenue on certiorari review to argue and obtain a determination that the County was liable for discrimination and compensatory damages under the ADA or that Plaintiffs were entitled to injunctive and declaratory relief.
>
> The Circuit Court has no jurisdiction to make factual findings or

enter a judgment on the merits of the underlying controversy, and it may not enter injunctions or award damages. The Circuit Court, sitting in its appellate capacity, cannot reweigh the evidence, draw different inferences, or substitute its judgment. Rather, "[c]ircuit court review of such action, known as 'first-tier' review, is limited to determinations whether (1) procedural due process was accorded in the administrative proceeding; (2) the essential requirements of law were observed in the administrative proceeding; and (3) the administrative findings and judgment are supported by competent substantial evidence."

*Kimberly Regenesis LLC v. Lee County*, No. 2:19-cv-538-FtM-38NPM, 2020 WL 758099, at *6 (M.D. Fla. Feb. 14, 2020) (Chappell, J.).

The County's reliance on *Overcash v. Shelnutt*, 753 F. App'x 741, 746 (11th Cir. 2018), *Dotzel*, *supra*, *Irshad Learning Ctr. v. Cty. of DuPage*, 804 F. Supp. 2d 697, 711 (N.D. Ill. 2011), *Alfano v. Vill. of Farmingdale*, 693 F. Supp. 2d 231, 233 (E.D.N.Y. 2010), and *Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.*, 192 F. Supp. 2d 143, 157 (S.D.N.Y. 2002), for the proposition that the Commissioners are protected by absolute immunity when such acts are quasi-judicial in nature is misplaced. Motion, pp. 11-13. None of those cases addresses testimonial immunity.

### 3. Plaintiffs Properly Subpoenaed the Production of Documents from a Former Official

Plaintiffs served a subpoena for the deposition *duces tecum* of former Commissioner Manning on January 28, 2021 for records held in his *individual capacity* regarding his communications with Lee County, state officials, and various neighbors who opposed Plaintiffs' zoning application. Ex. 2. Manning has not denied that he personally keeps any of the records requested; nor has he filed

an affidavit to that effect. Nor has the County asserted that it has control over Manning's records kept by him individually.

The County argues that because the subpoena is directed to a former County official, "documents may only be requested from a party through the procedure outlined in Rule 34." Motion, pp. 21-2. As noted above, the subpoena was narrowed to records kept by former Commissioner Manning individually. None of the cases cited by the County holds that subpoenas for records directed to former officials kept by them personally cannot be subpoenaed.

In fact, the case law clearly allows such subpoenas. A former officer or director of an entity is not assumed to currently have possession, custody, or control over the documents of the entity. *Siegmund v. Brian*, 746 Fed. App'x 889, 891 (11th Cir. 2018). Having "control" is also dependent on the current condition of the parties in question, not their past relationship. *Lowe v. District of Columbia*, 250 F.R.D. 36 (D.D.C. 2008) (former government employees do not have control of documents in the possession of their former employer). "As a corporation exists separately from its officers and directors, it exists much more separately from its *former* officers and directors." *Siegmund v. Xuelian*, No. 12-62539, 2016 WL 1359595, at *2 (S.D. Fla. Apr. 6, 2016) (emphasis added). "Merely holding the status as the former director of a corporation does not satisfy the 'control' standard under Rule 34." *Id.*

In *S.E.C. v. Forster*, 147 F. Supp. 3d 223 (S.D.N.Y. 2015), the Securities and Exchange Commission ("SEC") sought enforcement of a subpoena served on an

individual "in his personal capacity and not as the custodian [of] records for the listed companies" – a distinction that the court found to be "significant." *Id*. at 231. Based on this distinction, the court found that [t]he *subpoena was directed at Forster personally, and he is required to produce his personal records*." *Id*. (emphasis added). The same reasoning applies here, and Manning must produce any such records in his possession.

## IV. CONCLUSION

For the foregoing reasons, the Court should reject the County's attempt to prevent the deposition of the two current Commissioners and former Commissioners Manning and reject its claim of privilege. Further, Plaintiffs are entitled to full discovery of the private and public communications the Commissioners had before and after their vote, and the factual bases therefore.

Respectfully submitted,
s/ James K. Green, Esq.
Florida Bar No. 229466
jkg@jameskgreenlaw.com
JAMES K. GREEN, P.A.
222 Lakeview Avenue, Suite 1650
West Palm Beach, FL 33401
(561) 659.2029 (telephone)
(561) 655-1357 (facsimile)
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed with the Court on this 18th day of February, 2020, using the CM/ECF system which will send notice of electronic filing to the parties and counsel of record.

/s/ James K. Green