UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIMBERLY REGENESIS, LLC and
DAMASCUS TRADING
COMPANY, LLC,

    Plaintiffs,

v.                                                          Case No. 2:19-cv-538-SPC-NPM

LEE COUNTY,

    Defendant.

## ORDER

Before the Court is Defendant Lee County's Motion for Protective Order and to Quash Notices and Subpoena for Deposition (Doc. 66). For the following reasons, the motion is denied in part.

Plaintiffs Kimberly Regenesis, LLC and Damascus Trading Company, LLC applied to the County to rezone the property at 6401 Winkler Road to be able to provide both treatment and housing to persons in substance abuse recovery at its facility. (Doc. 1 ¶¶ 32, 57, 59-60). The Lee County staff issued a staff report recommending approval of the rezoning with conditions. (Doc. 1 ¶ 36). Thereafter, the Lee County Hearing Examiner held a three-day hearing, ultimately finding Plaintiffs proved entitlement to the zoning change and recommending approval of the rezoning with conditions. (Doc. 1 ¶¶ 15, 37-43). On August 5, 2015, the Board

of County Commissioners held a hearing to review and consider the Hearing Examiner's recommendation and to issue a final decision on Plaintiffs' application. (Doc. 1 ¶ 45). Ultimately, the board rejected the written recommendations and denied Plaintiffs' application for rezoning. (Doc. 1 ¶¶ 15, 55-56).

Plaintiffs brought suit, alleging that Defendant used its zoning code in a discriminatory fashion, with the intent of excluding them from the community, based in part on neighbors' animus toward persons in recovery in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Doc. 1; Doc. 68, p. 10).

## I.     Discovery Dispute Background

Defendant seeks protection for one former county commissioner (John Manning) and two current county commissioners (Frank Mann and Cecil Pendergrass) from being deposed, and it seeks protection from the subpoena duces tecum served on Commissioner Manning. (Doc. 66). Plaintiffs oppose the motion. (Doc. 68). The Court temporarily quashed the deposition notices for John Manning (Doc. 66-1, pp. 1-2, 7; Doc. 66-3, pp. 6-8), Frank Mann (Doc. 66-1, pp. 3-4, 7), Cecil Pendergrass (Doc. 66-1, pp. 5-7), and the subpoena for deposition duces tecum as to John Manning (Doc. 66-3). (Doc. 72).

On April 9, 2021, the Court held a hearing concerning several pending discovery motions. (Doc. 83). The Court ordered the parties to conduct their Rule 30(b)(6) depositions, after which the parties would reconvene on the remaining

motion concerning the commissioner depositions. (Doc. 86, pp. 7-8). The Court also permitted the parties to file any supplemental authority regarding the motion (Doc. 86, p. 8), and both parties did so (Docs. 88, 89).

On August 17, 2021, the Court held another hearing on the remaining discovery motion (Doc. 66). (Doc. 96). When asked about what Plaintiffs still sought from the commissioners after having completed their Rule 30(b)(6) depositions, Plaintiffs stated, in short, that they sought to depose the commissioners about their knowledge related to campaign contributions and ex parte communications. Plaintiffs also clarified they still seek to depose Commissioners Mann and Manning, but they no longer wish to depose Commissioner Pendergrass—instead, they seek to depose Commissioner Brian Hamman. And Plaintiffs volunteered to limit their depositions of each commissioner to two hours.

During the hearing, Defendant noted that, in preparation for the 30(b)(6) deposition of the county representative, it interviewed the commissioners. And Defendant claims its 30(b)(6) designee, Mark Trank, testified that there were no ex parte communications. Defendant also noted that campaign finance was not listed as a topic in the 30(b)(6) notice, nor was it included in any interrogatories or requests for production. And Defendant claims there is no evidence of any ex parte communications, and any information about that topic was already provided during discovery. Concerning campaign finance issues, Defendant stated that it provided

lobbying logs from 2014 to 2016, which are also publicly available. In addition, defense counsel pointed out there is a Rule against ex parte communications and there are lobbying ordinances with criminal penalties that apply.

## II.  Summary of Supplemental Evidence

At the conclusion of the August 17 hearing, Defendant agreed to provide within one week the following information: the lobbying logs, the full deposition transcript of Mark Trank, and answers to certain interrogatories that could indicate duplicative discovery requests. (Doc. 96). Defendant did so and also provided relevant excerpts of deposition testimony.

Defendant is correct that there was no topic in the interrogatories propounded by Plaintiffs that expressly covered campaign finance. (Doc. 98-1). However, Plaintiffs did request all communications between the Lee County commissioners and certain named individuals and entities, including the Protect Our Community Political Action Committee ("PAC"). (Doc. 98-1, pp. 42, 45).

Defendant also provided Lee County Ordinance No. 03-14, which imposes criminal penalties on any county official or employee, including county commissioners, who "solicit or accept any compensation, payment, favor, service, or thing of value from a lobbyist when" such commissioner "knows, or with the exercise of reasonable care, should know, that it was given to influence a vote or recommendation favorable to the lobbyist." (Doc. 98-2, pp. 6-7). The Ordinance also

provides that the Clerk of the Board of County Commissioners must maintain publicly available lobbying logs, which are provided on a quarterly basis. (Doc. 98-2, p. 6).

The parties provided lobbying logs from September 2014 through September 2015 for Commissioners Brian Hamman (Doc. 98-3), Larry Kiker (Doc. 98-4), Frank Mann (Doc. 98-5), John Manning (Doc. 98-6), and Cecil Pendergrass (Doc. 98-7). The logs record any telephone calls or personal visits[1] that occurred, which are detailed with the name of the lobbyist or organization involved and the topic of discussion. In short, the logs show points of contact, but do not disclose campaign contributions. The lobbying logs of Commissioners Hamman, Kiker, Manning, and Pendergrass all contain signatures beneath the following certification: "I hereby certify that the below information is true and accurate to the best of my knowledge." (Docs. 98-3, 98-4, 98-6, 98-7). But Commissioner Mann's logs do not contain his signature underneath the certification. Rather, his logs include a signed letter "To: Minutes" that simply states: "Attached please find Lobbying Logs representing business contacts, both personal visits and phone communications" for the given quarter. (Doc. 98-5). None of the logs indicate points of contact with the Burts, the

---

[1] The lobbying logs do not appear to include other methods of contact like email correspondence. For example, Lee County corporate representative Mark Trank testified that Commissioner Pendergrass received an email from a member of the public about the proposed rezoning, but this does not appear to have been noted in the provided lobbying logs. (Doc. 97-1, p. 13).

Barnes, the PAC, or Sawyer Smith—only attorney Bruce Strayhorn[2] made contact but concerning topics unrelated to this litigation. (*See* Doc. 98-3, pp. 9, 11-12; Doc. 98-4, pp. 9, 11, 13, 17; Doc. 98-5, p. 12; Doc. 98-6, pp. 13, 17; Doc. 98-7, p. 6). Only one entry seemed obviously connected to this litigation—Commissioner Mann's log indicates a telephone call on June 23, 2015, from Kevin Lewis of "SWFAS" concerning the "Winkler Rehab center." (Doc. 98-5, p. 18).

The parties also provided the full deposition of Lee County corporate representative Mark Trank and excerpts of deposition testimony considered relevant to the pertinent issue of commissioner depositions. Contrary to defense counsel's representation during the August 17 hearing, Trank testified that he did not speak to any county commissioners prior to his deposition (Doc. 97-1, pp. 10, 12-14). He claims to have "no personal knowledge" that "a number of County Commissioners received campaign contributions from the opponents, their attorneys, or their associated companies or corporations prior to August 5, 2015." (Doc. 97-1, pp. 13-14). At some point, Trank became aware of a PAC that was formed by neighbors in opposition to the proposed rezoning. (Doc. 97-1, p. 14). But Trank did not ask any of the commissioners whether they received any such campaign contributions. (Doc. 97-1, p. 14). Nor did he inquire of the commissioners who voted to deny the rezoning whether they were aware that a PAC was formed and "had raised $200,000 to oppose

---

[2] Bruce Strayhorn and Sawyer Smith are Thomas Burt's attorneys. (Doc. 98-9, p. 4).

the rezoning, or [sic] politicians who voted to approve the proposed rezoning." (Doc. 97-1, p. 14).

Excerpts from the deposition of the corporate representative of Plaintiff Kimberly Regenesis, LLC—Veronica Martin—were also provided. (Doc. 98-11). Martin testified that she had no evidence that the rule against ex parte communications was violated. (Doc. 98-11, p. 2). She also conceded that while the commissioners did not disclose any campaign contributions during the August 5, 2015 hearing, she has never witnessed such a disclosure in the 40 or 50 Board hearings she attended on other occasions. (Doc. 98-11, p. 3).

Excerpts of the depositions of Nina Burt, Thomas Burt, and attorney Sawyer Smith were also included. (Docs. 98-8, 98-9, 98-10). Nina Burt objected to rezoning Plaintiffs' property and was aware of the lis pendens action filed in her and her husband's name involving Plaintiffs' property. (Doc. 98-8, pp. 3-4). She also claimed she did not make any campaign contributions or have any ex parte communications with any of the commissioners or their staff. (Doc. 98-8, pp. 3-5). But plaintiff counsel directed her to a document entitled "Campaign Treasurer's Report—Itemized Contributions," which indicated she was a "consultant" who made a contribution on April 28, 2015 for $1,000. Mrs. Burt responded, "Well, sometimes my husband will come and say, 'sign this check,' and I'll sign it." (Doc. 98-8, p. 7). Mrs. Burt also claimed she and her husband never held any political fundraisers at

their house prior to August 5, 2015, or at any time. (Doc. 98-8, p. 5).

Thomas Burt testified that he could not make any campaign contributions in his wife's name, and that she would have to make a contribution in her own name. (Doc. 98-9, p. 3). He admitted to making campaign contributions from himself individually and through other channels, including several companies and his lawyers, to multiple commissioners, including Kiker and Manning. (Doc. 98-9, pp. 2, 9-10, 12). The amount paid into the PAC by Mr. Burt, Mr. Burt's father, and Mr. Burt's two neighbors—William ("Billy") and Amy Barnes—totaled about $200,000. Apparently, this amount does not account for the direct contributions made to the commissioners by Nina Burt, Mr. Burt's lawyers, Mr. Burt's companies, Mr. Burt's father, or the father's own companies. (Doc. 98-9, p. 12; *see also* Doc. 98-10, p. 3).

Thomas Burt acknowledged familiarity with the rule prohibiting ex parte communications with the commissioners directly, noting that if attempted, "you'll get a nastygram back." (Doc. 98-9, p. 6). But he met with Commissioner Pendergrass after the August 5, 2015 vote and Mr. Burt has "spoken to him maybe twice." (Doc. 98-9, p. 7). Mr. Burt eventually admitted he emailed Pendergrass a complaint about Plaintiffs having a large party with a bounce house. (Doc. 98-9, pp. 7-8). Mr. Burt also stated he created and distributed fliers on behalf of the PAC and organized a community meeting held in a public building downtown. (Doc. 98-9, pp. 5, 8).

Sawyer Smith—Mr. Burt's lawyer (Doc. 98-9, p. 4)—testified he set up and was the chairman of the Protect Our Community PAC. (Doc. 98-10, p. 2). Smith openly acknowledged he has made campaign contributions to "every county commissioner," including Kiker, Pendergrass, Hamman, and Mann. (Doc. 98-10, p. 5). He also stated he "bundled" contributions, meaning he fundraised by gathering campaign contributions from various other contributors. (Doc. 98-10, p. 5). Smith also stated he has made campaign contributions through various companies or related business entities that he owns. (Doc. 98-10, p. 6). He assumed he met with the Barnes at their residence at some point, but he was not aware of nor attended any fundraising events at either the Barnes's or Burt's residence. (Doc. 98-10, pp. 3-4).

## III. Legal Standard

Rule 26(b)(1) governs the scope of discovery. It permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). But the Rules have mechanisms to limit discovery. Courts "must" limit discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Pursuant to Rule 26(c)(1), any "party or any person from whom discovery is sought may move for a protective order," and the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order." *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. Sept. 28, 2005) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Additionally, "in a discovery dispute involving a nonparty, the nonparty's status is considered by the court in assessing the burden of complying with the discovery request." *In re Photochromic Lens Antitrust Litig.*, No. 8:10-md-2173-T-27EAJ, 2012 WL 12904391, *2 (M.D. Fla. Dec. 20, 2012) (citation omitted). Rule 45 requires a party issuing and serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45 also provides that "the court for the district where compliance is required must quash or modify a subpoena that:"

    (i) fails to allow a reasonable time to comply;

    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

## IV. Commissioner Depositions

As a threshold matter, Defendant must demonstrate it has standing to challenge these subpoenas. "A party has standing to challenge a non-party subpoena if the party alleges a 'personal right or privilege' with respect to the subpoena or if a subpoena seeks irrelevant information." *McCoy v. GEICO Gen. Ins. Co.*, No. 6:19-cv-353-Orl-WWB-DCI, 2019 WL 5391104, *2 (M.D. Fla. Aug. 14, 2019) (citations omitted). And a party also has standing to challenge the proportionality of the information sought. *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, 317 F.R.D. 587, 589 (M.D. Fla. Nov. 2, 2016). But a party has no standing to object to a non-party subpoena on the basis that the subpoena is burdensome, oppressive, or overly broad. *McCoy*, 2019 WL 5391104 at *2. Here, Defendant asserts the privilege that the commissioners are immune from discovery and it also claims the discovery sought is duplicative and disproportionate. Therefore, the Defendant has standing to challenge these deposition subpoenas.

Defendant argues that the Board of County Commissioners is entitled to quasi-judicial immunity, but this case is not a suit against the county commissioners. (Doc. 66, pp. 8-13). The "right to immunity is a right to immunity *from certain claims*, not from litigation in general." *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996)

(emphasis in original); *see also Mason v. Stallings*, 82 F.3d 1007, 1010 (11th Cir. 1996) ("Judicially created qualified immunity enables a public official to avoid suit on an alleged constitutional or federal law violation where the law governing the claimed right was not clearly established at the time of the official's conduct.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Plaintiffs brought suit against the Defendant County rather than the commissioners in their individual capacities. And the commissioners could not be sued under the ADA because they are not public entities. *Mason*, 82 F.3d at 1009 (holding "County Commissioners could not be held liable in their individual capacities for any violation of the [ADA]."). Therefore, quasi-judicial immunity is inapposite here.

Alternatively, Defendant avers Plaintiffs are not entitled to depose high-ranking "apex" government officials absent extraordinary circumstances. (Doc. 66, pp. 13-15); *see, e.g., In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993) (Food and Drug Administration Commissioner); *In re USA*, 624 F.3d 1368 (11th Cir. 2010) (Environmental Protection Agency Administrator).

Several cases in this District have supported the proposition that elected state officials **who lack personal knowledge** of the issues are entitled to certain discovery protections. *See Davis on behalf of J.D.D. v. Carroll*, No. 8:16-cv-0998-T-35MAP, 2017 WL 11151858, *2 (M.D. Fla. July 24, 2017) (Secretary of the Florida Department of Children and Family); *Vidovic v. City of Tampa*, No. 8:16-CV-714-

T-17AAS, 2017 WL 10294804, *1 (M.D. Fla. Mar. 3, 2017) (city mayor); *Slone v. Judd*, No. 8:09-cv-1175-T-27TGW, 2011 WL 1584421, *1 (M.D. Fla. Apr. 26, 2011) (county sheriff); *Rocker v. Sheriff of Marion Cty., Fla.*, No. 5:07-cv-465-OC-10GRJ, 2008 WL 11434586, *2 (M.D. Fla. Oct. 14, 2008) (same), *objections overruled*, No. 5:07-cv-465-OC-10GRJ, 2008 WL 11449341 (M.D. Fla. Nov. 25, 2008). But this Court has refused to designate county commissioners as high-ranking government officials who are excused from providing testimony. *See Tracy P. v. Sarasota Cty.*, No. 8:05-cv-927-T-27EAJ (M.D. Fla. Oct. 25, 2006) (Doc. 88-2, p. 5) (County commissioners are "not the sort of high ranking government official[s] who [are] excused from testifying.").³

Moreover, the apex doctrine rarely, if ever, shields a lead official from discovery when the official is directly involved in the event at issue and has **personal knowledge** about it. *See Woolfolk v. Columbia Cty., Fla.*, No. 3:07-cv-137-J-25TEM, 2008 WL 11433240, *2 (M.D. Fla. Feb. 22, 2008) (allowing deposition of sheriff because he was a named defendant and had direct knowledge of the facts and

---

³ Defendant cites *Grochowski v. Clayton County, Georgia through Turner*, 961 F.3d 1311, 1322 (11th Cir. 2020), cert. denied sub nom. *Grochowski v. Clayton County, Georgia*, 141 S. Ct. 1269 (2021) for the proposition that county commissioners constitute high-ranking government officials entitled to heightened protection. (Doc. 66, p. 15). But this case does not stand for that proposition. In *Grochowski*, the Eleventh Circuit refused to overturn a district court's decision to grant a protective order prohibiting the deposition of former Chairman of the County Board of Commissioners regarding his decision-making process with respect to the design and funding of a jail. The court reasoned it would not have aided plaintiffs' case. *Id.* *Grochowski* has little, if any, bearing here because it applied an appellate standard of review and made no mention of whether the commissioners were "high-ranking government officials."

policies pertaining to the particular case). And in *Tracy*, the Court alternatively found that even if the commissioner was a high ranking official, this did not foreclose his deposition because the county did not demonstrate his attendance at a deposition would be too severe a distraction from his public duties. *Tracy P. v. Sarasota Cty.*, No. 8:05-cv-927-T-27EAJ (M.D. Fla. Oct. 25, 2006) (Doc. 88-2, p. 5). As a Fair Housing Act and ADA case involving claims against another Florida county, *Tracy* is highly persuasive—including its court-imposed limitation on deposition discovery of a county commissioner. Specifically, the *Tracy* court limited such deposition to two hours. *Id.* (Doc. 88-2, pp. 5-6).

In this ADA suit, Plaintiffs seek to depose three current and former county commissioners. The Court is mindful of the Defendant's concerns that the depositions should not interfere with the commissioners' official duties and its position of prohibiting duplicative discovery. But the Court must balance both parties' interests. In particular, the Court finds Plaintiffs have a valid interest in deposing the commissioners on the limited issue of their communications with and influence (including campaign contributions) from the PAC that opposed the proposed zoning as well as the politically-involved neighbors who opposed the rezoning, including the Burts, Barnes, and their lawyers and advocates. It is relevant to the particular allegations of discrimination in this suit. And the commissioners have personal knowledge of their communications and campaign contributions, if

any, with the above-referenced individuals or PAC. The lobbying logs do not appear to show all types of communications (*see supra* note 1) or campaign contributions, so this discovery is not duplicative. Nor does it seem appropriate to preclude any inquiry into their completeness or veracity. There is also a legitimate question whether Defendant's 30(b)(6) designee could serve as an appropriate vehicle to explore the personal knowledge and motivations of the commissioners, especially since he admitted that he did not confer with the commissioners before his deposition. (Doc. 97-1, pp. 10, 12-14). Moreover, the following limitations should ensure the depositions are proportional to the needs of the case.

Plaintiffs' depositions of the commissioners will be limited in time and scope. First, Plaintiffs' questioning of Commissioners Mann, Manning, and Hamman will last no longer than four hours combined (not four hours for each commissioner). Second, the depositions will be limited to: (1) any communications or other interactions with persons or entities other than county staff concerning the Plaintiffs, 6401 Winkler Road, or the Protect Our Community PAC, since January 1, 2014; and (2) any monetary or in-kind contributions to any campaign committee or interest group by any opponent to the rezoning at issue.

### V.  Subpoena duces tecum

Defendant also seeks protection from a subpoena duces tecum (Docs. 66-1, 66-3) served on Commissioner Manning. (Doc. 66, pp. 21-22). Commissioner

Manning has not objected to the subpoena, which seeks two types of records of communications. (Doc. 66-1, pp. 1-2, 7).[4] Plaintiffs' counsel also conveyed in an email that he was willing to narrow the request to records in Commissioner Manning's *individual* control. (Doc. 68, p. 18; Doc. 68-3).

Rule 45 governs subpoenas issued to nonparties. Fed. R. Civ. P. 45; 34(c). The scope of discovery under Rule 45 is the same as set forth in Rule 26(b)(1). *See Woods v. On Baldwin Pond, LLC*, No. 6:13-cv-726-Orl-19DAB, 2014 WL 12625078, *1 (M.D. Fla. Apr. 2, 2014). Generally, discovery must be relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The starting point to ascertain relevancy is with the complaint (Doc. 1) and the defenses (Doc. 46). *Id.*, 2000 Advisory Committee Notes ("The Committee

---

[4] The listed topics in the subpoena duces tecum are:

1. Records of communications from January 1, 2014 to present with Lee County, its Board of County Commissioners, officials, agents or employees, Amy Barnes, Tina Ekblad, Brian A. Feiock, Leslie Feiock, Jutta Fisher, Christopher Gregg Fous, Jeri Goetz, Aaron A. Haak, Tom Burt, Nina Burt, Jennifer Hall, Woodward S. Hanson, William Jarvis, Flora Jones, Virginia Leary-King, Robert A. Krebsbach, Neal Marion, Jason Moore, Bill Morris, Nicholas Paulus, Owieta Post, Barbara Roth, Susie Santamaria, Vincent Santamaria, Elaine Sherer, Sawyer C. Smith, Bruce Strayhorn, John Terry, Rob Price, or residents of Cold Saturday Farms or their agents or representatives, including but not limited to Jenna Persons, that reference the Property, Thomas Mouracade, Kimberly Regenesis, LLC, and Damascus Trading Company, LLC or their agents, employees, representatives, officers and members, patients or residents.

2. Records of communications from January 1, 2016 to present with the State of Florida Department of Children and Families that reference the Property, Thomas Mouracade, Kimberly Regenesis, LLC, and Damascus Trading Company, LLC or their agents, employees, representatives, officers and members, patients or residents.

Case 2:19-cv-00538-SPC-NPM   Document 101   Filed 09/29/21   Page 17 of 18 PageID 1795

intends that the parties and the court focus on the actual claims and defenses involved in the action.").

Defendant argues the subpoena for deposition duces tecum of Manning is an improper document request to a party outside the procedures in Rules 30 and 34. Specifically, Defendant claims the subpoena is an attempt to obtain documents through a subpoena directed to a party representative, which is sidestepping proper discovery procedures. (Doc. 66, p. 22).

As noted above, a party has standing to object to a non-party subpoena if the party alleges a "personal right or privilege" with respect to the subpoenas. *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (finding that party did not have standing to move to quash a subpoena, but holding that the party nonetheless had standing to challenge the relevancy of documents sought by subpoena, thus, deeming the motion to quash as a motion for protective order under Rule 26). But since the subpoena duces tecum is narrowed to communications Commissioner Manning possesses in his individual capacity, Defendant has not shown it has a personal right or privilege to challenge the subpoena.

Even if Defendant could challenge the subpoena, it has still not shown any merit to its objection. Since Defendant's initial motion was filed (Doc. 66), the Court has learned that none of the commissioners are party representatives—rather Mark

Trank was designated as Defendant's 30(b)(6) corporate representative. (*See* Docs. 94, 97). So Defendant has not shown that Plaintiffs' request was improper.

## VI. Conclusion

Defendant's Motion for Protective Order and to Quash Notices and Subpoena for Deposition (Doc. 66) is **DENIED in part**. The commissioner depositions will be conducted on as expedited basis and as limited above. From the deponents, the examiners, the parties, and anyone else involved in these three depositions, the Court expects the highest degree of professionalism, decorum, and good faith cooperation.

An amended scheduling order with a deadline for the completion of this discovery (by **November 15, 2021**) will issue separately. The Court is mindful of the burden this places on the deponents and defense counsel, but the Court is committed to having this matter set for a trial term during the first half of 2022.

**ORDERED** in Fort Myers, Florida on September 29, 2021.

*Nicholas P. Mizell*
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE