**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 10, 2023

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  21-13880-AA
Case Style:  Kimberly Regenesis, LLC, et al v. Lee County, Florida
District Court Docket No:  2:19-cv-00538-SPC-NPM

All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at
www.ca11.uscourts.gov.

Clerk's Office Phone Numbers
General Information:                         404-335-6100    Attorney Admissions: 404-335-6122
New / Before Briefing Cases:          404-335-6135    Capital Cases:            404-335-6200
Cases in Briefing / After Opinion: 404-335-6130    CM/ECF Help Desk: 404-335-6125
Cases Set for Oral Argument:          404-335-6141

OPIN-1A Issuance of Opinion With Costs

[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13880

_____

KIMBERLY REGENESIS, LLC,

DAMASCUS TRADING COMPANY, LLC,

Plaintiffs-Appellees,

*versus*

LEE COUNTY,

a Florida political subdivision,

Defendant-Appellant.

_____

Appeal from the United States District Court

for the Middle District of Florida

D.C. Docket No. 2:19-cv-00538-SPC-NPM

———————————————

Before LUCK, LAGOA, and TJOFLAT, Circuit Judges.

PER CURIAM:

This case arises out of a sober home's battle to rezone its property. When its efforts came up short, the sober home sued the county in federal court, alleging disability discrimination. As discovery got underway, the sober home served a notice of deposition in which it sought to depose one of the county commissioners who voted down its rezoning request. The county opposed the deposition, arguing that the commissioner was shielded from discovery by absolute quasi-judicial immunity. But the commissioner never objected to the deposition request or otherwise appeared before the district court. The district court found that the immunity didn't apply. At that point, the county and the commissioner appealed. Their sole argument on appeal is that the district court erred by denying the commissioner quasi-judicial immunity.

The problem is that their appeal is not justiciable. First, the county may not appeal because it lacks appellate standing under Article III. To appeal, a party must be aggrieved by the district court's order. But it's the commissioner—not the county—who has the (alleged) immunity. So the county has suffered no injury and cannot challenge the district court's denial of the immunity on appeal. Second, the commissioner may not appeal because he was not a named party to this case and did not become a party through intervention, substitution, or third-party practice. While a

nonparty may sometimes appeal when he has participated before the district court, the commissioner didn't participate at all.  Because the county has no appellate standing, and the commissioner did not participate below, we must dismiss this appeal.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case is about a sober home's attempt to rezone its property.  The sober home is situated on 5.15 acres in Lee County, Florida.  Our plaintiffs, Kimberly ReGenesis, LLC and Damascus Trading Company, LLC, own and operate the facility.  In 2014, the sober home applied to rezone the land.  The goal was to rezone the property from agricultural to a special designation for treatment facilities.  This would allow the sober home to expand and operate as a "treatment center and detoxification facility."

At first, things were looking good for the sober home.  It met with Lee County staff members and put together an application for rezoning.  The plan called for the creation of a "holistic medicine center" that would include ninety beds, a kitchen, nine dwelling units, a place of worship, and 9,000 square feet of medical offices and retail space.  The county's staff members and a hearing officer signed off on the application, recommending approval.

Some residents of Lee County weren't happy with the prospect of this large facility opening up in their residential neighborhood.  So a number of residents formed a political action committee to support commissioners who opposed the rezoning application.  The political action committee also ran ads on local radio

stations.  Some members of the community also spoke out against the sober home.

In the heat of this public opposition, the sober home faced a public hearing before Lee County's board of county commissioners.  There were five commissioners:  Brian Hamman, John Manning, Frank Mann, Larry Kiker, and Cecil Pendergrass.  After the hearing, the commissioners—overruling their staff members and the hearing officer—voted down the rezoning.  The commissioners reasoned that the sober home's project was "potentially destructive to the character and integrity of the residential neighborhood environment and therefore [did] not meet" the county's land use requirements.

The sober home challenged the commission's ruling in state court.  But the Florida circuit court and district court of appeal denied the sober home's petition.  When that failed, the sober home sent a letter to the county asking for a reasonable accommodation.  The sober home asked the county to "grant a reasonable accommodation administratively to treat the proposed use as a permitted use or, in the alternative, to rezone the property."  About a month and a half later, the county denied the sober home's request, explaining that the request would result in a "fundamental alteration" of its zoning scheme.

That brings us to this case.  On July 31, 2019, the sober home sued the county in federal court and brought one count under the Americans with Disabilities Act.  It alleged that "[t]he county's application of its zoning code to prevent use of the [sober home] by

[its] patients, and the denial of its request for reasonable accommodation, constitute[d] discrimination under Title II of the [Americans with Disabilities Act]." In other words, the sober home alleged that the county "discriminate[d] against . . . persons in recovery."

As discovery went underway, the sober home sought to depose—and get documents from—three of the county commissioners who denied the sober home's rezoning application. To that end, the sober home served notices on the county for the depositions of those three commissioners (Commissioners Pendergrass, Mann, and Manning). The sober home also served a subpoena on Commissioner Manning. None of the commissioners were named parties to this case.

The county moved for a protective order and to quash the subpoena. Its motion sought to "preclude the depositions" of the nonparty commissioners and to "quash the subpoena to Commissioner Manning." The county raised three arguments. First, the county argued that the nonparty commissioners were cloaked in "quasi-judicial immunity" and thus "immune from discovery." Second, the county asserted that, even if the commissioners were not immune, they should be shielded from the depositions under the "apex doctrine." Third, the county contended that the depositions were "not proportional to the needs of the case." The commissioners did not appear in the case or join the motion.

The sober home opposed the county's motion. First, the sober home argued that immunity from suit does not mean

immunity from discovery. So, "even if the [c]ommissioners had absolute or qualified immunity, that [would] not render them immune from all discovery." Second, the sober home asserted that the apex doctrine did not apply because the commissioners were not "high government officials . . . who had no personal knowledge of the events in question." Third, the sober home maintained that it was "entitled to full discovery" of the commissioners' "private and public communications" and the "factual bases" for their votes.

A few things happened before a ruling on the county's motion for a protective order. First, the magistrate judge held a hearing on the motion. A lawyer appeared "on behalf of the [d]efendant" Lee County (and another lawyer appeared for the sober home), but the nonparty commissioners did not appear. Second, both the sober home and the county later filed notices of supplemental authority to support their positions. Third, the magistrate judge then held a second hearing. Again, only the sober home and the county appeared.

After the hearing, the magistrate judge ruled on the county's motion for a protective order. The magistrate judge mostly denied the motion, allowing the depositions to go forward. First, the magistrate judge explained that quasi-judicial immunity didn't apply because "this case is not a suit against the county commissioners." Second, the magistrate judge found that the apex doctrine was inapplicable because the commissioners had "personal knowledge" of the facts. Third, the magistrate judge concluded that the sober

home had "a valid interest in deposing the commissioners on the limited issue of their communications with and influence (including campaign contributions) from the [political action committee] that opposed the proposed zoning as well as the politically-involved neighbors who opposed the rezoning."

So the magistrate judge allowed the depositions to go forward but "limited [them] in time and scope." As to time, the depositions for the three commissioners could "last no longer than four hours combined." As to scope, the questioning would be limited to:

> (1) any communications or other interactions with persons or entities other than county staff concerning the [p]laintiffs, [the property], or the [political action committee], since January 1, 2014; and (2) any monetary or in-kind contributions to any campaign committee or interest group by any opponent to the rezoning at issue.

The county objected to the magistrate judge's order, but the district court adopted it.[1] In its objections, the county again argued

---

[1] There's only one difference between the district court's order and the magistrate judge's order. At one of the motion hearings, the sober home told the magistrate judge that it wanted to depose Commissioner Hamman instead of Commissioner Pendergrass. So the magistrate judge made that switch, ordering the depositions of Commissioners Hamman, Mann, and Manning. The county objected to that substitution. So the district court subbed back in Commissioner Pendergrass for Commissioner Hamman.

that the commissioners were shielded by quasi-judicial immunity and the apex doctrine. None of the commissioners objected. The district court found that the magistrate judge's order was "well-reasoned" and adopted it, allowing the depositions to go forward.

At that point, the county and the nonparty commissioners filed a notice of appeal. This was the first time that the commissioners appeared in this case. While the appeal was pending, the commissioners filed a notice of suggestion of death, informing the court that two of the three commissioners—Commissioners Mann and Manning—had passed away. We dismissed those two commissioners from this appeal. But we noted that the appeal would continue as to Lee County and Commissioner Pendergrass.

We also issued jurisdictional questions to the parties. We asked the parties to address "whether non-party Commissioners Frank Mann, John Manning, and Cecil Pendergrass have appellate standing to appeal from the district court's denial of Lee County's motion for protective order." The parties responded. This opinion follows.

## STANDARD OF REVIEW

"We review questions of [appellate] standing de novo." *LaTele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, 9 F.4th 1349, 1357 (11th Cir. 2021) (reviewing a party's "standing" to "appeal").

## DISCUSSION

In this interlocutory appeal, the county and the commissioner challenge the district court's denial of quasi-judicial immunity. That sole issue frames our review. Because this appeal raises many jurisdictional—and other threshold—questions, we have the option of choosing which path to go down. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (quotation omitted)).

We rest our decision on two threshold grounds. First, we conclude that the county lacks standing to appeal because it was not aggrieved by the district court's order denying the commissioner's alleged immunity. Second, we hold that the commissioner may not appeal because he was not a party to this case and did not participate in the proceedings before the district court.

### *The county*

The county lacks Article III standing to appeal. "Litigants must establish their standing not only to bring claims, but also to appeal judgments." *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003). "To establish appellate standing, a litigant must 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). This, of course, resembles the standing

requirements plaintiffs must meet to bring a case in the first instance. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998) (noting that Article III standing to sue requires the "triad of injury in fact, causation, and redressability").

But, while they are "similar and overlapping, the doctrines of appellate standing and trial standing are not identical." *Wolff*, 351 F.3d at 1353. The "most obvious difference" is that "standing to appeal" requires an "injury caused by the judgment" while "standing to bring suit" requires an "injury caused by the underlying facts." 15A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3902 (3d ed. & Supp. Sept. 2022). In other words, "[i]n the context of appellate standing, the primary meaning of the injury requirement is adverseness: 'Only a litigant who is *aggrieved by the judgment or order* may appeal.'" *Amodeo*, 916 F.3d at 971 (emphasis added) (quoting *Wolff*, 351 F.3d at 1354).

The county lacks standing to appeal because it was not aggrieved by the district court's order denying immunity. That's because what's at stake in this appeal is the commissioner's quasi-judicial immunity, not the county's immunity—and so the county cannot be aggrieved by the district court's denial of the immunity. In other words, the county's main argument before the district court—and its only argument on appeal—is that the *commissioners* were shielded from discovery by absolute quasi-judicial immunity. But official immunities (like quasi-judicial immunity) belong to the official, not the county. *See Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (holding that, when a municipality is sued,

"the municipality may not assert [an official immunity] as a defense to [its own] liability under [section] 1983").

The Supreme Court has made clear, for example, that "an official in a personal-capacity action may . . . be able to assert personal immunity defenses" (like quasi-judicial immunity) but that "these defenses are unavailable" in a suit against a municipality. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985); *see also Brandon v. Holt*, 469 U.S. 464, 473 (1985) ("[A] municipality is not entitled to the shield of qualified immunity from liability[.]"). Put another way, "[t]he[] defenses of absolute immunity and qualified immunity are the official's personal privileges for his official acts. They do not belong to the governmental entity, and the entity itself is not allowed to assert them." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Indeed, courts have widely held that a municipality—or an official sued in his official capacity (which is the equivalent of a suit against the municipality)—cannot assert quasi-judicial immunity. *See, e.g.*, *Capra v. Cook Cnty. Bd. of Rev.*, 733 F.3d 705, 710 (7th Cir. 2013) ("[M]unicipal entities are not entitled to absolute [quasi-judicial] immunity."); *VanHorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007) ("[A]bsolute, quasi-judicial immunity is not available for defendants sued in their official capacities."); *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) ("[D]efenses such as absolute quasi-judicial immunity, that only protect defendants in their individual capacities, are unavailable in official-capacity suits.").

What all of this means is that any official immunity—including quasi-judicial immunity—belongs to the commissioner, not the county. *See Graham*, 473 U.S. at 166–67; *Owen*, 445 U.S. at 638; *Brandon*, 469 U.S. at 473. The county conceded as much at oral argument. Because the immunity does not belong to the county, the county is not aggrieved by the district court denying the immunity. And so the denial of quasi-judicial immunity did not give the county standing to bring this interlocutory appeal challenging the denial of the commissioner's alleged immunity. *See Knight v. Alabama*, 14 F.3d 1534, 1555–56 (11th Cir. 1994) (explaining that only a party who is "aggrieved" by the judgment or order may appeal).

Nor was the county aggrieved in any other way. The county suggested that it was aggrieved by the district court's denial of the immunity because the depositions would "distract[] [the commissioners] from their job[s] and their duties." We doubt that there could possibly be any distraction. The depositions, after all, were narrowly tailored. The district court limited the depositions to a total of four hours on two narrow topics. There's no indication that the depositions would take place during working hours or that the county would bear any costs for the depositions. In any event, since we're past the motion-to-dismiss stage, the county had to present "by affidavit or other evidence specific facts" showing that it was aggrieved by the district court's order denying immunity. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation omitted). It hasn't done that.

In the end, it's the commissioner (not the county) who has the immunity. Because the county was not aggrieved by the district court's order denying the immunity, it has no standing to appeal. *See, e.g.*, *Schultz v. Alabama*, 42 F.4th 1298, 1317–18 (11th Cir. 2022) (dismissing appellants who were not "aggrieved by the [district court's] decision"); *Nationwide Mut. Ins. Co. v. Barrow*, 29 F.4th 1299, 1303 (11th Cir. 2022) (holding that a party "lack[ed] appellate standing" because the party "suffered no injury from the [district court's] judgment"); *Amodeo*, 916 F.3d at 973 (holding that a party "lack[ed] standing" to appeal because the district court's ruling "did not aggrieve—or even affect—[him]"). The county's appeal must be dismissed.[2]

### The commissioner

The commissioner may not appeal, either. "The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988); *see also In re Leaf Tobacco Bd. of Trade of N.Y.*, 222 U.S. 578, 581 (1911) ("One who is not a party to a record and judgment is not entitled to appeal therefrom."); *Ex parte Cockcroft*, 104 U.S. 578, 578–79 (1881) ("Inasmuch . . . as the

---

[2]  There's also reason to think that the county lacks prudential standing to appeal. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("We have adhered to the rule that a party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (quotation omitted)). We need not reach that issue, however, because the county lacks Article III standing to appeal.

petitioner was not made a party to the suit, either by an express order of the court to that effect, or by being treated as such, his application for an appeal was properly denied."); *Ex parte Cutting*, 94 U.S. 14, 22 (1876) ("Only parties . . . can appeal.").

But who counts as a "party" to a case?  First, there are the named parties.  "A 'party' to litigation is '[o]ne by or against whom a lawsuit is brought.'"  *United States ex rel Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (quoting *Black's Law Dictionary* 1154 (8th ed. 2004)).  Second, "[o]ne who is not an original party to a lawsuit may of course become a party by intervention, substitution, or third-party practice."  *Karcher v. May*, 484 U.S. 72, 77 (1987).  Third, as we'll discuss below, there's an exception where a nonparty—who has not, for example, intervened—may still be considered a party who can appeal.  *See Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) (holding that "nonnamed class members . . . who have objected in a timely manner" before the district court "have the power to bring an appeal without first intervening").

The commissioner was not a named party—and he did not become a party by intervening—so the question here is whether he falls into the third bucket.  He doesn't.  Our sister circuits have adopted various tests for assessing when it is that a nonparty (who hasn't intervened) may appeal.  But, whatever the test, those courts have consistently required the nonparty to have *participated* in the case before the district court:

> A person who is not a party to the proceedings below generally    cannot    appeal    the    court's    judgment.

> However, courts have granted exceptions *where the non-parties actually participated in the proceedings below*, the equities weigh in favor of hearing the appeal, and the non-parties have a personal stake in the outcome.

*EEOC v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1442 (5th Cir. 1995) (cleaned up & emphasis added); *see also, e.g.*, *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 349 (3d Cir. 1999) ("Ordinarily, those who were not parties to the proceeding below may not appeal an order of a district court. However, this court has recognized that a nonparty may bring an appeal when three conditions are met: (1) the nonparty has a stake in the outcome of the proceedings that is discernible from the record; (2) the nonparty has participated in the proceedings before the district court; and (3) the equities favor the appeal." (cleaned up)); *Doe v. Pub. Citizen,* 749 F.3d 246, 259 (4th Cir. 2014) ("The rule that only original parties and intervenors to the action before the district court may appeal an adverse judgment is not absolute. We have recognized an exception to the general rule that permits a nonparty to appeal a district court's order or judgment when the appellant (1) possessed an interest in the cause litigated before the district court and (2) participated in the proceedings actively enough to make him privy to the record." (cleaned up)); *Curtis v. City of Des Moines*, 995 F.2d 125, 128 (8th Cir. 1993) ("Only a properly named party may initiate an appeal, and those who neither intervene or otherwise attain party status may not appeal a district court's judgment. There is, however, a recognized exception to this rule, where a person has

an interest in the cause litigated and participated in the proceedings actively enough to make him privy to the record." (cleaned up)); *SEC v. Wencke*, 783 F.2d 829, 834 (9th Cir. 1986) ("Although persons who were not parties of record before the district court usually may not appeal that court's orders or judgment, we have allowed such persons to bring appeals in cases where:  (1) they participated in the district court proceedings, and (2) the equities weigh in favor of hearing the appeal."); *Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 993 (10th Cir. 2021) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.  But this general rule has exceptions, as when a non-party possesses a unique interest in the outcome of the case and actively participates in the proceedings relating to that interest." (cleaned up)); *Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984, 991 (D.C. Cir. 2023) (noting that "only parties can appeal an adverse underlying order or judgment" but that "the label 'party' applies also to those bound by an underlying order who participated in the trial court").

While we need not decide here the precise contours of when it is that someone not named a party to a suit (who hasn't become a party) may appeal, we agree with our sister circuits that the non-party must have at least participated in the district court.  *See Devlin*, 536 U.S. at 8, 10 (allowing a nonparty to appeal when the nonparty was "bound by the order from which [he was] seeking to appeal" and participated in the district court under "the applicability of various procedural rules").  It is only by participating that we

can assure ourselves that a nonparty has become "privy to the record," *United States ex rel. Louisiana v. Boarman*, 244 U.S. 397, 402 (1917) ("[N]o person can . . . appeal . . . to reverse a judgment who is not a party or privy to the record." (cleaned up)), and has been "treated" as a party by the district court, *Cockcroft*, 104 U.S. at 579.

Here, the commissioner didn't participate in the district court. The sober home served a notice of deposition seeking to depose the commissioner. But the county—not the commissioner—moved for a protective order. The county appeared at hearings on that motion. The county filed a notice of supplemental authority in support of the protective order. And the county then objected to the magistrate judge's order. The commissioner didn't do any of these things. Indeed, both the magistrate judge and the district court were clear that it was the *county's* motion for a protective order, not the commissioner's. The commissioner finally appeared in the case—for the first time—in the notice of appeal. Because the commissioner wasn't a party, didn't intervene, and didn't participate in the district court, he cannot appeal the district court's order.

Other courts have found that a nonparty may not appeal in similar circumstances. Take *Texas Brine Co. & Occidental Chemical Corp.*, 879 F.3d 1224 (10th Cir. 2018), for example. There, Texas Brine (a well operator) brought a cross-claim against Oxy (a land owner) and sought $6.5 million for the work a consulting firm performed for it. *Id.* at 1226. To verify the costs of that consulting work, Oxy issued a subpoena duces tecum to the nonparty

consulting firm. *Id.* Texas Brine moved to quash that subpoena. *Id.* at 1227. The district court denied Texas Brine's motion in part. *Id.* And Texas Brine appealed. *Id.* at 1228. What makes *Texas Brine* similar to our case is that the nonparty consulting firm—who hadn't moved to quash—also filed a notice of appeal. *Id.* at 1228 n.4.

The Tenth Circuit held that the nonparty couldn't appeal. *Id.* The court explained that, "[i]n general, only parties to a lawsuit or those who properly become parties may appeal." *Id.* "The exception to this rule," the court said, "is where the nonparty [1] has a unique interest in the litigation and [2] becomes involved in the resolution of that interest in a timely fashion both at the district court level and on appeal." *Id.* (cleaned up). The problem in that case was that, even if the consulting firm "ha[d] a unique interest in th[e] litigation, it plainly fail[ed] to meet the second prong of th[e] test." *Id.* "Even though [the consulting firm] could have filed a motion to quash . . . , it did not." *Id.* The consulting firm did include an "affidavit attached to Texas Brine's motion to quash the subpoena" stating that the consulting firm "objected to the subpoena." *Id.* But that wasn't enough. The consulting firm "did not become involved in [the] case in a timely fashion at the district court level" and so the Tenth Circuit couldn't "review [the consulting firm's] challenge to the district court's order." *Id.*

Our case is just the same. The sober home (who was a party) served a notice to depose the commissioner (who was not a party). The commissioner didn't move for a protective order. He

didn't appear in the case. And he didn't object to the magistrate judge's order denying the protective order. Instead, as in *Texas Brine*, it was a party (the county), not the nonparty (the commissioner), who opposed the discovery in the district court. And the commissioner, like the nonparty consulting firm in *Texas Brine*, finally appeared—for the first time—to appeal the district court's ruling. That was too late in *Texas Brine* and it's too late here. The commissioner didn't participate before the district court, so he can't appeal.

Other courts have reached the same conclusion: a nonparty who didn't participate in the district court may not appeal. *See, e.g.*, *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 384 (4th Cir. 2018) (finding that a nonparty could not appeal where "she did not participate in any manner in the post-judgment proceedings at issue in [the] appeal"); *La. Off. of Cmty. Servs.*, 47 F.3d at 1443 (finding that a nonparty could not appeal where "[n]either [the nonparty] nor her attorney pled, intervened or otherwise participated in the proceedings below").

In response, the commissioner advances two arguments, but both are unpersuasive. First, the commissioner argues that he couldn't participate in the district court because the sober home issued a "notice of deposition" to the county but did not "subpoena" him. The commissioner contends, in other words, that he couldn't object (or otherwise participate) below because he was a nonparty and wasn't subpoenaed. The commissioner is wrong. One way the commissioner could have participated was by moving

for a protective order.  The federal rules provide that "[a] party *or any person* from whom discovery is sought may move for a protective order." Fed. R. Civ. P. 26(c)(1) (emphasis added).  The commissioner could've moved for a protective order under rule 26 even though he was a nonparty.

Or the commissioner could have participated—and objected to the discovery—by sitting for the deposition and asserting a privilege in response to concrete questions.  Once he asserted the privilege and refused to answer, the sober home could have moved for an order compelling discovery, and the district court could have ordered the commissioner to answer.  *See generally* Fed. R. Civ. P. 37.  Had he been held in contempt for failing to proceed with the deposition, the commissioner could've then appealed that decision. *See Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1323 (11th Cir. 2016) (explaining that "a litigant seeking to overturn a discovery order" can "refuse to comply with the order and contest its validity if subsequently cited for contempt for his refusal to obey" (quotation omitted)); *see also Cobbledick v. United States*, 309 U.S. 323, 328 (1940) (explaining that once a "witness chooses to disobey [a discovery order] and is committed for contempt," the "witness' situation becomes so severed from the main proceeding as to permit an appeal").  So the commissioner had options.  There was no reason that he couldn't have opposed the deposition in the district court.

Second, the commissioner argues that the county asserted his immunity on his behalf.  But it wasn't the county's immunity

to assert.  *See Graham*, 473 U.S. at 166–67.  And the county's asser-tion of the immunity doesn't equate to the commissioner's partici-pation in the case.  There's a reason courts require a nonparty's participation in a case before the nonparty can appeal:  to ensure true adversarial testing.  Our case is a prime example of what hap-pens without that testing.  Here, the commissioner didn't appear, so it's impossible to know (for example) what his position would have been, whether he would have asserted the immunity, whether he would have asserted it wholesale or only as to specific questions, or what those specific questions would have been.  The commissioner never got involved in the district court and so we'll stay our hand.

**APPEAL DISMISSED.**