UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIMBERLY REGENESIS, LLC
and DAMASCUS TRADING
COMPANY, LLC,

      Plaintiff,

v.                                      Case No.: 2:19-cv-538-SPC-NPM

LEE COUNTY,

      Defendant.
_____/

## **ORDER**

Plaintiffs Kimberly Regenesis, LLC and Damascus Trading Company, LLC sue Defendant Lee County for disability discrimination and failure to provide a reasonable accommodation under Title II of the Americans with Disabilities Act ("ADA"). This case is set for a bench trial. But before any evidence is taken, the Court must address three motions:

- Plaintiffs' Partial Motion for Summary Judgment (Doc. 157)

- Defendant's Motion for Summary Judgment (Doc. 158)

- Defendant's Motion in Limine to Exclude Expert Testimony of Plaintiff's Designated Expert Witnesses (Doc. 148)

These motions are all opposed and ripe for review.

## BACKGROUND[1]

This case started a decade ago. In 2014, Plaintiffs asked Defendant to rezone a parcel of land[2] from Agricultural ("AG-2") to Community Facilities Planned Development ("CFPD").[3] They needed the rezoning to build a 72-bed residential substance abuse treatment center and detoxification facility.[4] Plaintiffs were initially successful. Defendant's staff and hearing examiner recommended rezoning because the facility was compatible with the surrounding area's mixed-use character. But the success was short-lived.

The Lee County Board of Commissioners unanimously voted against the rezoning at a public hearing on August 5, 2015.[5] It found Plaintiffs' desired facility "was potentially destructive to the character and integrity of the

---

[1] Unless noted, the facts are agreed to or are undisputed in the record.

[2] The parcel is located at 6401 Winkler Road, Fort Myers, Florida 33919.

[3] When the rezoning application was made, Plaintiffs did not own the property—a trust did. But the trust authorized Plaintiff Damacus to file and pursue the rezoning. (Doc. 20-1 at 7). In fact, the Hearing Examiner Recommendation identifies the applicant as "Thomas M. Mouracade for Damascus Trading Company, LLC." (Doc. 157-1; *see also* Doc. 1 at 31; Doc. 167 at 3).

[4] Plaintiff Kimberly Regenesis is the entity that will operate and treat individuals recovering from substance abuse disorders. Plaintiff Damascus is the entity that has owned the land since November 2015, and leases it to Kimberly Regenesis. (Doc. 159 at 55:4-11). The Court refers to both as "Plaintiffs" unless otherwise noted.

[5] The Board's five commissioners were Brian Hamman, Larry Kiker, John Manning, Frank Mann, and Cecil Pendergrass. Only Hamman and Pendergrass sit on today's Board. Because the parties do not distinguish between the Board and Lee County, neither does the Court.

residential neighborhood environment and therefore [did] not meet" Defendant's land use goals. (Doc. 157-5 at 4).

Plaintiffs dispute why their application failed. According to them, the Board rejected the rezoning because of community opposition to the facility. Local neighbors led an organized "not-in-my-back-yard" campaign against the rezoning and publicly spoke against the facility before and during the hearing. Because Plaintiffs believe the Board caved to pressure from neighbors' bias against recovering addicts, they have spent the past eight years litigating the rezoning denial.

Plaintiffs started the fight in state court and litigated there for about four years. They filed a Petition for Writ of Certiorari to quash the Board's decision and claimed the Board "departed from the essential requirements of law, lacked competent substantial evidence to support its rejection of [their] application, and failed to afford [them] due process."[6] (Doc. 20-1). The Petition also referenced the ADA: "In addition, the County denied [Plaintiffs'] application for a substance abuse detoxification facility because of community opposition to people in recovery from drug and alcohol addiction (the 'Recovery

---

[6] About one year lapsed between the Board's decision and Plaintiffs' petition. During that gap, Plaintiffs asked a special magistrate to examine whether the denial was unreasonable or unfairly burdened the property. (Doc. 20-6). After an evidentiary hearing, the special magistrate recommended affirming the Board's decision. The Board then set a hearing to consider the special magistrate's recommendation, but Plaintiffs abandoned their request and filed suit. (Doc. 20-7).

3

Community'), a legally protected class under the [ADA.])." (Doc. 20-1 at 5 (footnote omitted)). The state court disagreed with Plaintiffs: "the Board was aware that it could not simply deny the application simply because members of the community opposed the proposed use, and took steps to instruct the public not to waste time at the hearing with comments that amounted to mere dislike at the thought of having the facility in the community." (Doc. 20-2 at 17). Plaintiffs appealed again but lost there too. (Doc. 20-5).

As the state litigation was proceeding, Plaintiffs pursued another avenue to get the zoning approval. They asked Defendant for a reasonable accommodation under the ADA.[7] Their request was twofold: (1) treat the proposed use (i.e., the residential substance abuse treatment center and detoxification facility) as a permitted use in the AG-2 zone, or (2) rezone the property to CFPD and treat the facility as a permitted use. (Doc. 157-4). Defendant[8] denied both options as unreasonable and a key change to its zoning scheme. (Doc. 157-5 at 1, 8). Plaintiffs took no further action with their reasonable accommodation request until this case.

---

[7] Plaintiffs addressed their letter requesting the reasonable accommodation to David Loveland, Defendant's then-Director of Community Development. (Doc. 157-4 at 1). The letter was dated June 10, 2016.

[8] Mark A. Trank, the assistant county attorney, signed the letter denying Plaintiffs' reasonable accommodation request but did so on the Board's letterhead. (Doc. 157-5 1, 8).

4

Having lost in state court, Plaintiffs came here. On August 1, 2019, they filed this ADA suit seeking monetary damages, declaratory relief, and injunction relief. Plaintiffs have alleged that Defendant (1) intentionally discriminated against them and their proposed patients when it denied the rezoning application, and (2) did not provide a reasonable accommodation.

The pleading and discovery stages were fraught with motions and an interlocutory appeal. It has taken nearly four years to reach summary judgment. And this stage has been no less contentious. Right before the summary judgment deadline, Plaintiffs voluntarily dropped their monetary damages claim and now seek only declaratory and injunctive relief. (Doc. 145). Both parties have moved for summary judgment, and Defendant has moved to exclude Plaintiffs' two experts.

## DISCUSSION

**A. Motions for Summary Judgment**

Defendant moves for summary judgment on jurisdictional grounds and because the merits of the intentional discrimination and failure to accommodate claims fail. Plaintiffs move for summary judgment only on the failure to accommodate claim. The Court begins with the threshold question of jurisdiction.

*1. Standing*

Since this case started, Defendant has argued Plaintiffs lack standing. The Court rejected the standing arguments in Defendant's motion to dismiss. But Defendant reraises standing because Plaintiffs have dropped their damages request and seek only equitable relief. (Doc. 158 at 11).

To determine whether Plaintiffs have standing, the Court must decide whether they have (1) suffered an injury in fact that is both (2) fairly traceable to Defendant's conduct and (3) redressable by the requested injunction and declaration. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The second and third prongs are easily satisfied. Plaintiffs' alleged injury (the inability to run the residential treatment facility) is traceable to Defendant's conduct (denying the rezoning application and reasonable accommodation request) and would be redressed by an injunction (requiring Defendant to approve the application or grant the requested reasonable accommodation). (Doc. 1 at 24). So standing turns on the first prong—whether Plaintiffs have shown that they have suffered the requisite injury in fact.

To qualify for injury-in-fact status, the plaintiff's injury must be concrete and particularized, and actual or imminent. "[B]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury." *Shotz v. Cates*, 256 F.3d 1077, 1081

6

(11th Cir. 2001) (citation omitted and emphasis in original). Past harm will not always be enough. *Id.* at 1082.

Although the Complaint centers on past events, the earlier harm doesn't necessarily stay in the past. Plaintiffs are injured each day they cannot build and run the treatment facility for people in recovery. (Doc. 167 at 23). Plaintiffs are also "able and ready" to run the facility, further showing a concrete injury. *See Aaron Priv. Clinic Mgmt. LLC v. Berry,* 912 F.3d 1330, 1338 (11th Cir. 2019) (explaining when a plaintiff requests prospective relief, it must generally show it is "able and ready" to take the action assert to show a concrete injury). According to Plaintiffs, they are providing outpatient treatment at a separate location, are licensed by Florida's Department of Children and Families, own the property where they seek to provide the treatment facility, and have detailed plans on the design. *See Aaron*, 912 F.3d at 1338 ("A plaintiff alleging that it would have opened a business absent the challenged action must point to at least some facts suggesting a likelihood that its business would have come about absent the challenged action."). Plaintiffs have shown they are ready to meet the local demand for the facility.[9]

---

[9] Defendant notes that the Court's prior dismissal order only addressed financial injury as a basis for standing. (Doc. 158 at 11). Not quite. The Court left open whether Plaintiffs' other alleged injury—"the lost opportunity to provide a much-needed service"—would suffice. The Court merely explained that the need for a treatment facility alone was not enough without facts showing Plaintiffs' readiness to supply that need. (Doc. 45 at 16).

7

Defendant does not end its standing challenge there. It also argues that Plaintiffs lack associational or third-party standing because (1) there is no evidence that they will have residents with an ADA disability, (2) Damascus has never associated with any patient, and (3) Kimberly Regenesis had no patients until after the rezoning and reasonable accommodation requests were denied. (Doc. 158 at 16). The Court disagrees on all counts.

The ADA authorizes "persons aggrieved" by disability discrimination to sue. 42 U.S.C. §12133. In *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011), the Supreme Court broadly construed "persons aggrieved" as extending standing to any person arguably within the zone of interests protected by the statute. As the owner of the land and operator of a facility intended to serve people with a disability, Plaintiffs fall within the zone of interests protected by the ADA and thus have standing. What's more, Defendant's decisions foreclosed Plaintiffs from opening the treatment facility to potential patients, which is why no patient has been named here. *See MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 336 (6th Cir. 2002) ("Plaintiff has presented evidence that it was altogether foreclosed from opening its clinic in the first place because of the substance abuse services it planned to offer to its potential clients and that Defendants discriminated against it on that basis."). The Court thus rejects Defendant's third-party standing arguments.

8

One final point. That Plaintiffs bought the property after the Board denied the rezoning application does not negate standing. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 (1977) (non-owner of property with contract contingent on securing rezoning had standing to sue).

In conclusion, the Court denies Defendant's motion for summary judgment on standing.

### 2. Mootness

When considering Defendant's standing argument, the Court sua sponte asked for supplemental briefing on the mootness doctrine because of two cases: *Mayor of Philadelphia v. Educ. Equal. League*, 415 U.S. 605 (1974) and *Stanley v. Broward Cnty. Sheriff*, 773 F. App'x 1065 (11th Cir. 2019). Mootness is established only when (1) "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur" and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979). *Mayor of Philadelphia* and *Stanley* examined those elements in the context of discrimination under 42 U.S.C. § 1983. Both cases involved individual executives accused of discriminatory conduct personal to their administrations. When the executives left their offices, the courts found the threat of future discrimination stopped and mooted the discrimination claims.

A concern about this case has been that the majority of the Board's commissioners have changed in the ten years since Plaintiffs applied for the rezoning and sought a reasonable accommodation. Having the benefit of the parties' briefs, however, the Court is satisfied the intervening change to the Board's composition does not moot this case. The Court is not convinced the logic of *Mayor of Philadelphia* and *Stanley* extends to ADA claims, especially the reasonable accommodation claim where a discriminatory motive is irrelevant. *See Nadler v. Harvey*, No. 06-12692, 2007 WL 2404705, at *4 (11th Cir. Aug. 24, 2007) (explaining that an ADA claim for failure to accommodate requires no discriminatory animus by the decisionmaker). Also, two of the original commissioners are still on today's Board and the local neighbors who opposed the rezoning remain. So the Court cannot assuredly say that today's Board would decide Plaintiffs' requests any differently. This case thus is not moot.

  *3. Res Judicata and Collateral Estoppel*

Next up, Defendant argues that res judicata and collateral estoppel prevent Plaintiffs' claims. "[T]he doctrine of res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011). Res judicata applies "where there is: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4)

10

identity of the quality [or capacity] of the persons for or against whom the claim is made; and (5) the original claim was disposed on the merits." *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1074 (11th Cir. 2013) (internal citations omitted).

Likewise, "collateral estoppel applies when the identical issue has been litigated between the same parties and the particular matter was fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction." *Paresky v. Miami-Dade Cty. Bd. of Cty. Comm'rs*, 893 So. 2d 664, 665-66 (Fla. Dist. Ct. App. 2005).

Defendant pressed res judiciata and collateral estoppel arguments at the motion to dismiss stage, but the Court denied them. (Doc. 45 at 17-18). Now, because Plaintiffs have dropped their damages claim, Defendant argues that Plaintiffs are seeking the same relief as they did in state court. The Court again disagrees.

The facts and evidence to maintain this suit differ from the state court proceedings. *See Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. Dist. Ct. App. 2005) (explaining the identity of the cause of action is a question of "whether the facts or evidence necessary to maintain the suit are the same in both actions"). The state court examined the record as it was before the Board at the public hearing. And the alleged discrimination did not happen until the Board denied the request. So Plaintiffs never had the chance to develop the

11

record under the mindset of ADA discrimination. Moreover, Plaintiffs did not request the reasonable accommodation until after they filed the Petition for Writ of Certiorari in the state court. So the failure to accommodate claim could neither have been raised in the earlier proceedings nor been part of the administrative record for the state court to review. The Court thus rejects Defendant's res judicata and collateral estoppel arguments.

### 4. *Merits of the ADA Claims*

Before delving into the merits of the ADA, the Court must address a point on the pleadings. Defendant uses a footnote to criticize the Complaint for not separating the claims for intentional discrimination and failure to accommodate. That's true. The Complaint alleges one count for "Claims under Title II of the ADA." (Doc. 1 at 23). There, Plaintiffs assert that "[t]he County's application for its zoning code to prevent use of the Kimberly ReGenesis Center by Plaintiffs' patients, and the denial of its request for reasonable accommodation, constitute discrimination under Title II of the ADA." (*Id.*). But Defendant has never raised this issue. The parties conducted discovery under the scope of claims for intentional discrimination *and* failure to accommodate. So there is no claim confusion or prejudice to Defendant. As the parties have done throughout this case, the Court construes the Complaint to assert separate claims for intentional discrimination and failure to accommodate and will address the summary judgment arguments as to both.

12

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" exists when a rational factfinder could find for the non-moving party. And a fact is "material" if it might affect the outcome. Judgment is appropriate "as a matter of law" when the non-moving party has not made an adequate showing on an essential element of which he must prove. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In deciding summary judgment, a court must view the evidence and make all reasonable inferences for the non-moving party. But courts may not make credibility determinations or weigh the evidence when reviewing the record. *See Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002). Against this backdrop, the Court turns to each claim.

a. Intentional Discrimination

Defendant makes two arguments on intentional discrimination: (1) Plaintiffs have not proven that they are disabled (or associated with those who are disabled) under the ADA, and (2) there is no evidence the Board held any discriminatory motive. Neither argument prevails at this stage.

First, the ADA protects an organization from discrimination because of its known association with disabled individuals. The Board knew Plaintiffs intended to associate with disabled individuals. Indeed, the focus of the public

13

hearing was Plaintiffs' desire to treat people who fall under the ADA (i.e., individuals recovering from substance abuse disorders). And it is immaterial when Plaintiffs began this association. *See Social Recovery, LLC v. City of Costa Mesa*, 56 F.4th 802, 814 (9th Cir. 2023) ("[T]he City's argument, taken to its logical conclusion, would preclude the owner or operator of *any* proposed facility from surviving summary judgment. By definition, a *proposed* facility has no residents. So no matter how egregious the zoning discrimination, under the City's standard requiring individualized proof of disability, no suit by the owner or operator of a proposed home for people with disabilities would survive summary judgment.").

Second, Plaintiffs have presented enough circumstantial evidence of intentional discrimination to survive summary judgment. Because the nature of legislative action makes it difficult to determine the intent of the acting body, the Eleventh Circuit has recognized several factors probative of whether a decision-making body was motivated by discriminatory intent. *See Thai Meditation Ass'n of Ala., Inc. v. City of Mobile, Ala.*, No. 1:16-CV-395-TFM-MU, 2019 WL 2250275, at *12-13 (S.D. Ala. May 24, 2019), *aff'd,* 980 F.3d 821 (11th Cir. 2020). Where there is no stark pattern of discrimination, courts should look to these types of circumstantial evidence: (1) historical background of the decision, particularly if it reveals a series of official actions taken for invidious purposes, (2) the specific sequence of events leading to the challenged decision,

(3) departures from the normal procedural sequence and substantive departures, (4) legislative or administrative history, especially where there are contemporary statements by members of the decision-making body, minutes of its meetings, or reports, (5) foreseeability of discriminatory impact, (6) knowledge of discriminatory impact and (7) the availability of less discriminatory alternatives. *Id.*

Defendant addresses none of these factors—and it's not the Court's job to build the argument from the record. Plaintiffs also highlight statements from the Commissioners that, when viewed in the light most favorable to them, could raise a triable dispute about the Board's intent. For example, before Plaintiffs presented their evidence at the hearing, one commissioner said, "[W]hen my time comes to speak I will put evidence into the record that will hopefully gather votes to deny this application." (Doc. 157-10 at 18:12-16). And although another commissioner warned public members not to speak at the hearing with simple comments about disliking the facility, that's largely what the Board heard. (*Id.*). Finally, it is reasonable the Board suspected a discriminatory impact by denying the rezoning because they asked their attorney what they needed to do to make their decision hold. Given the standard at summary judgment, the Court finds enough factual dispute to move the case forward.

b. <u>Failure to Make Reasonable Accommodation</u>

15

As mentioned, the parties cross-move for summary judgment on failure to accommodate. To prevail on this claim, a plaintiff must prove that (1) he is disabled, (2) he asked for a reasonable accommodation, (3) the requested accommodation was necessary to allow him to equally use and enjoy a dwelling, and (4) the defendant refused to make the requested accommodation. *Schaw v. Habitat for Human. of Citrus Cnty., Inc.*, 938 F.3d 1259, 1264 (11th Cir. 2019). The Court need look only at the second and third elements to find genuine issues of material fact that prevent summary judgment for either party.

The reasonableness inquiry considers "whether the requested accommodation is both efficacious and proportional to the costs to implement it." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1289 (11th Cir. 2014) (quotation omitted). Although a plaintiff must show that its proposed accommodation is facially reasonable, the defendant must then show why the requested accommodation would cause undue hardship. *Schaw*, 938 F.3d at 1265. Because the hearing examiner and other staff recommended approving Plaintiffs' desired rezoning, it was at least facially reasonable. For Defendant's part, it insists making the facility a permitted use or rezoning would fundamentally alter its plan to protect residential areas from commercial encroachment. Yet Plaintiffs have pointed to other commercial

uses in the surrounding area. Put simply, there is a genuine dispute about reasonableness.

There is also a dispute over the necessity of Plaintiffs' proposed accommodation. To be necessary, the accommodation must address a need caused by Plaintiffs' disability. So, to be necessary, Plaintiffs must show that living in the therapy center with the requested features (like a place of worship, communal dining, and medical/health features) all address a need caused by their residents' addiction. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1225 (11th Cir. 2008). Plaintiffs intend to call an expert to testify about the need for a treatment facility in the local community, but it is unclear whether they have evidence about the need for the proposed facility's particular features. Because this matter is better resolved at the bench trial, the Court denies summary judgment as to the failure to accommodate claim.

*5. Conclusion*

The Court finds that Plaintiffs have standing, the doctrines of mootness, res judicata, and collateral estoppel do not bar this suit, and there are genuine questions of material fact on the merits of the claims. Given this posture, the Court also denies any lingering arguments Defendant makes about issuing a mandatory injunction. That matter is better fleshed out at the bench trial. So, in conclusion, the Court denies both motions for summary judgment.

**B. Motion to Exclude Plaintiffs' Experts**

Defendant finally moves to exclude Plaintiffs' two experts, Veronica Martin and Dr. Mary Mouracade, for three reasons. (Doc. 148). First, it maintains that neither Martin nor Dr. Mouracade have any specialized knowledge to help the Court understand the evidence or determine a fact. Second, Defendant claims that Martin will usurp the Court's role by stating legal conclusions on reasonable accommodations and the application of local zoning regulations. Third, both expert opinions are based on flawed methods and are not based on facts or data.

The Eleventh Circuit has established a three-part test to determine whether expert testimony should be admitted under Federal Rule of Evidence 702 and *Daubert*[10]: (1) the expert must be qualified to testify about the matters he intends to address; (2) the expert's methods must be sufficiently reliable; and (3) the testimony must help the trier of fact understand the evidence or determine a fact in issue. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005). The party seeking to introduce the expert witness must satisfy these criteria.

The Eleventh Circuit has recognized that the barriers to opinion testimony are more relaxed in a bench trial where the judge is serving as

---

[10] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93 (1993).

factfinder and the court is not concerned about "dumping a barrage of questionable scientific evidence on a jury." *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."). Indeed, "most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). At bottom, the Court, sitting as trier of fact, is in the best position to distinguish between persuasive and insufficient expert evidence at trial.

So Defendant's concerns about Plaintiffs' experts are more appropriately discussed at trial when all the facts can be considered. *See N.W.B. Imports & Exports, Inc. v. Eiras*, No. 3:03-cv-1071-J-2-MMH, 2005 WL 5960920, at *1 (M.D. Fla. Mar. 22, 2005) ("Because this is a non-jury trial, the gatekeeping purpose of *Daubert* is not implicated. The Court will therefore receive [the expert's] testimony, make a final admissibility decision and, if admissible, accord it the weight, if any, it deserves."); *see also NBIS Constr. & Transp. Ins. Servs., Inc. v. Liebherr-Am., Inc.*, No. 19-2777-AAS, ECF Doc. 96 (M.D. Fla. June 22, 2021) (denying without prejudice motion to exclude expert witness and noting that "the court can address these issues with the benefit of the context of the trial and can disregard inadmissible evidence"). If any shortcomings about an expert's qualifications arise, or part of any expert's

19

testimony seems unhelpful or unreliable, Defendant may present its arguments through "[v]igorous cross examination [and the] presentation of contrary evidence." *Daubert*, 509 U.S. at 596. The Court thus denies without prejudice Defendant's motion to exclude Plaintiffs' experts.

Accordingly, it is

**ORDERED:**

1. Defendant's Motion in Limine to Exclude Expert Testimony of Plaintiff's Designated Expert Witnesses (Doc. 148) is **DENIED**.

2. Plaintiffs' Partial Motion for Summary Judgment (Doc. 157) is **DENIED**.

3. Defendant's Motion for Summary Judgment (Doc. 158) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on June 24, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record